Filed 10/7/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SAVE MOUNT DIABLO,<br><br>　　　Petitioner and Respondent,<br><br>v.<br><br>CONTRA COSTA COUNTY et al.,<br><br>　　　Defendants;<br><br>RONALD E. NUNN et al.,<br><br>　　　Real Parties in Interest and<br>　　　Appellants. | A142357<br><br>(Contra Costa County<br>Super. Ct. No. CIV-MSN-13-0774) |

　　　Real parties in interest Ronald and Shirley Nunn bought a large tract of agricultural property in Contra Costa County. The tract was recorded as a single parcel, but it actually consisted of four separated parts of unequal size. These parts were formed years before the Nunns bought the property when a local agency acquired through eminent domain two narrow strips of land crossing the property and intersecting each other. A road was built on one strip, and a pipeline was buried under the other.

　　　After the Nunns abandoned an effort to subdivide the property under the parcel map provisions of the Subdivision Map Act,[1] they asked the county to issue certificates of compliance to confirm that each of the four parts nonetheless satisfied the requirements of the Act. The county did so, and Save Mount Diablo (SMD) petitioned for a writ of mandate challenging the county's decision. The trial court granted the petition, and we affirm. We hold that a "division" of property within the meaning of the

_____

[1] Government Code section 66410 et sequitur (the Act). All further statutory references are to the Government Code unless otherwise indicated.

1

Act does not occur simply because an eminent domain proceeding results in a physical separation of a property's non-condemned portions. The owner of such a property is therefore not entitled to a certificate of compliance for each of the resulting separate parts.

BACKGROUND

In the mid-1990s, the Contra Costa Water District (District) oversaw the construction of a dam in the eastern part of Contra Costa County. The project required the District to acquire 20,000 acres of property from about 40 county landowners, and it included relocating 13 miles of road and installing 20 miles of water pipeline and 12 miles of gas line. One of the properties affected by the project was a 586-acre tract of land now owned by the Nunns. Roughly rectangular in outline, the property is crossed by two narrow, intersecting strips of land that were acquired by the District through condemnation proceedings in 1997. One, running generally north and south, was acquired to relocate Vasco Road. The other, running east and west, intersects Vasco Road at a right angle and was acquired to accommodate an underground pipeline.[2] The previous owners of the Nunns' property were ultimately awarded $964,000 in compensation for the taking. A drawing of the property and strips taken, adapted from an exhibit submitted below, is appended to this decision.

The Nunns purchased the property in 2006. The deed describes it as a single parcel, defined by metes and bounds, with District-owned land excluded.[3] As a result of the exclusions, the property consists of four parts, separated from each other by the

---

[2] The pipeline strip actually consists of two recorded parcels: one running from the property's eastern boundary to the point at which it abuts the Vasco Road parcel and a second parcel running from the opposite side of the Vasco Road parcel to the property's western boundary.

[3] In addition to the narrow strips, several other pieces of land apparently lying within the boundary of the property are also excluded from the parcel, including other parcels of land conveyed for the purpose of road creation. These other exclusions are described only by metes and bounds or other abstract identifiers in the deed, and it is not clear from the record where within the property they are located. The parties have made no claims relating to these other exclusions.

narrow strips of District-owned land. The Nunns nevertheless have ready access between them. The land above the buried pipeline is covered in gravel and is freely passable, and Vasco Road, which is two lanes wide as it passes through the property, can be crossed on the surface and by way of underpasses. Presently, the property is at least partially planted with wine grapes and is subject to a Williamson Act[4] contract restricting its use to agricultural purposes.

Two years after buying the property, the Nunns applied to the county for a parcel map subdividing the property under the Act into four lots and one remainder parcel. As we discuss below in more detail, a landowner who wants to subdivide property normally is required to obtain local approval of a parcel or final map demonstrating that the division complies with applicable state and local laws governing land use and development. SMD, a nonprofit corporation, raised a number of objections to the Nunns' application based on concerns with the environmental impact of potential new development.

Before completing the parcel map process, the Nunns abandoned their application. Instead, they asked the county to issue a certificate of compliance for each of the property's four parts under another provision of the Act, section 66499.35, subdivision (a). Under this provision, a property owner need not file an approved map if the responsible agency concludes that "the real property complies with the provisions of [the Act] and of local ordinances enacted pursuant to [the Act]." (*Ibid*.) The Nunns argued that they were entitled to a certificate for each part because the District's condemnation had the effect of subdividing the property for purposes of the Act.

County planning staff denied the Nunns' request for four certificates of compliance, concluding that the property's separation as a result of the condemnation did not constitute a "subdivision" for purposes of the Act. The Nunns appealed, and the County Planning Commission reversed the staff's decision. SMD then appealed to the County Board of Supervisors, which rejected the appeal and issued the four certificates.

---

[4] Section 51200 et sequitur.

3

SMD filed a petition for writ of mandate against the county and Board of Supervisors, seeking an order requiring the county to set aside the certificates. The trial court granted the petition. It concluded that no legal authority supported the Nunns' theory that the condemnation effected a subdivision of the property within the meaning of the Act. In granting the petition, the court noted its concern that such an "automatic subdivision" would set a "wide-ranging precedent potentially applicable to many property owners in the area" whose properties had been separated in some manner by a public acquisition of property. The Nunns appealed.[5]

## DISCUSSION

The Nunns first argue, as they argued below, that the county properly issued the four certificates of compliance under section 66499.35, subdivision (a) because the condemnation effected a subdivision of the property as a matter of law. Alternatively, they argue that the county was required to issue four *conditional* certificates of compliance under subdivision (b), even if the condemnation did not effect a subdivision under the Act.

A local government's decision to grant or deny a certificate of compliance is ordinarily reviewed for substantial evidence. But issues of law, such as those presented here, are reviewed de novo. (*Abernathy Valley, Inc. v. County of Solano* (2009) 173 Cal.App.4th 42, 46 (*Abernathy Valley*).)

*A. The Subdivision Map Act.*

The Act "grants to local governments the power to regulate the manner in which their communities grow. Although the Act itself contains few, if any, substantive growth

---

[5] The Nunns' notice of appeal was filed two days after the trial court's ruling, prior to the entry of a judgment. "[A]n order granting or denying a petition for an extraordinary writ constitutes a final judgment for purposes of an appeal, even if the order is not accompanied by a separate formal judgment" when " ' "no issue is left for future consideration except the fact of compliance or noncompliance" ' " with the order. (*Public Defenders' Organization v. County of Riverside* (2003) 106 Cal.App.4th 1403, 1409.) We treat the trial court's order as appealable because it appears to have resolved all issues presented by the petition.

4

regulations, it requires every landowner who wishes to divide a single parcel of land into smaller parcels for individual sale—thereby increasing the density of settlement on the land—to obtain the approval of the local government before doing so. [Citations.] At the same time, the Act vests '[r]egulation and control of the design and improvement of subdivisions' in city and county governing bodies, requiring them to adopt ordinances regulating the manner in which growth will occur. [Citation.] By requiring proposed new subdivisions to comply with these regulations as a condition of approval, local governments can ensure that new real estate development conforms with their communities' general and specific plans and other regulations adopted to guide growth. [Citation.] Local governmental control over community growth made possible by the Act 'encourage[s] and facilitate[s] orderly community development . . . and assure[s] proper improvements are made, so that the area does not become an undue burden on the taxpayer.' " (*Witt Home Ranch, Inc. v. County of Sonoma* (2008) 165 Cal.App.4th 543, 551.) Transferring portions of land without complying with the Act is illegal and subjects the transferor to various penalties. (§§ 66499.30, subds. (a) & (b), 66499.31, 66499.34.)

The Act legitimizes property divisions under processes that are both forward and backward looking. In a process that is forward looking, the Act allows an owner who wants to subdivide property to apply for a final or parcel map effecting the subdivision. Under the Act, " '[s]ubdivision' means the division, by any subdivider, of any unit or units of improved or unimproved land, or any portion thereof, shown on the latest equalized county assessment roll as a unit or as contiguous units, for the purpose of sale, lease, or financing, whether immediate or future."[6] (§ 66424.) "Ordinarily, subdivision under the Act may be lawfully accomplished only by obtaining local approval and recordation of a tentative and final map pursuant to section 66426, when five or more parcels are involved, or a parcel map pursuant to section 66428 when four or fewer

---

[6] Throughout this opinion, we frequently refer to "conveying" a portion of property for the sake of brevity and readability, but in doing so we understand that the statute's language includes selling, leasing, or financing property.

parcels are involved." (*Gardner v. County of Sonoma* (2003) 29 Cal.4th 990, 997 (*Gardner*); §§ 66426, 66428, 66457, 66463.) The final or parcel map must be approved by the responsible local agency, which can approve the map if it conforms with applicable state laws and local ordinances governing land use and development. (§§ 66473, 66473.5; see generally, *Witt Home Ranch, Inc. v. County of Sonoma* (2008) 165 Cal.App.4th 543, 551.) "A local agency will approve a tentative and final map or a parcel map only after extensive review of the proposed subdivision and consideration of such matters as the property's suitability for development, the adequacy of roads, sewer, drainage, and other services, the preservation of agricultural lands and sensitive natural resources, and dedication issues." (*Gardner*, at p. 997.) The recordation of a final or parcel map "constitute[s]" a certificate of compliance with the Act. (§ 66499.35, subd. (d).)

In a different process, one that is backward looking, the Act allows an owner to legitimize a division of property that has already occurred by obtaining a certificate of compliance with the Act. Under this process, an owner or prospective purchaser of property that has already been divided, but for which no final or parcel map has been recorded, may obtain a certificate of compliance if "the division of the real property [creating the piece of property] complies with applicable provisions of [the Act] and of local ordinances enacted pursuant to [the Act]." (§ 66499.35, subd. (a).) Once a certificate of compliance has been issued, the property "may be sold, leased, or financed without further compliance with the . . . Act or any local ordinance enacted pursuant thereto." (*Id.*, subd. (f)(1)(E); *Gardner, supra,* 29 Cal.4th at p. 998.) In other words, the certificate of compliance clarifies the legal status of property that is not reflected on a recorded final or parcel map, thereby facilitating transactions involving the property.

A certificate of compliance is properly issued under section 66499.35, subdivision (a) when a statutory exemption from the map requirements applies.[7] These exemptions include those set forth in the Act's grandfather clauses. (§§ 66412.6, subd. (a), 66499.30, subd. (d); see generally, *Gardner*, *supra*, 29 Cal.4th at p. 1000.) Permitting certificates of compliance to be issued under these exemptions constitutes "an obvious effort to provide a fair and equitable scheme to settle the validity of divisions of land occurring in decades past under earlier provisions of law." (*Stell v. Jay Hales Development Co.* (1992) 11 Cal.App.4th 1214, 1227, disapproved on another ground in *Citizens for Covenant Compliance v. Anderson* (1995) 12 Cal.4th 345, 359, 366.) Another exemption, one we discuss in more detail below, applies to property transferred to or from a government agency as a result of a condemnation proceeding. (§ 66428, subd. (a)(2).)

In yet another process that is backward looking, the Act allows an owner to legitimize a division of property that has already occurred, but for which no map has been recorded *and* to which no statutory exemption applies, by obtaining a *conditional* certificate of compliance. "If a local agency determines that the real property does *not* comply with [the Act's mapping requirements] or of local ordinances enacted pursuant to this division, it shall issue a conditional certificate of compliance." (§ 66499.35, subd. (b), italics in original.) This provision applies, for example, where a part of a larger landholding was conveyed by deed without complying with the Act's map requirements,

---

[7] This reading of section 66499.35 is consistent with section 66499.30, which states that a parcel for which a recorded map is required cannot be sold, leased, or financed in the absence of such a map. The issuance of a certificate of compliance authorizing the sale, lease, or financing of a parcel for which there is no recorded map would be consistent with the prohibition of section 66499.30 only if such a map were not required for the parcel—i.e., only if the division creating the parcel were exempt from the map requirement.

i.e., was conveyed illegally. (§ 66499.30, subds. (a) & (b).)[8] Although the Act requires the issuance of a certificate of compliance for such property, it allows the local agency to impose "any conditions that would have been applicable to the division of the property at the time the applicant acquired his or her interest therein . . . ." (§ 66499.35, subd. (b).) The conditional certificate of compliance therefore serves as notice "that the fulfillment and implementation of these conditions shall be required prior to subsequent issuance of a permit or other grant of approval for development of the property."[9] (*Ibid.*)

B. *The Application of the Act to the Nunns' Property.*

The Nunns purchased their property as a single parcel, and it is described as such in the deed and in the assessor's rolls. Since the Nunns abandoned their effort to subdivide the property into four parts through the map process, the only issue before us is whether they are entitled to a regular or conditional certificate of compliance for each of the four parts of their property. We conclude that they are not because there has been no division of their property within the meaning of the Act.

1. The "De Facto Division" of the Nunns' Property Was Not a Division Under the Act.

The Nunns' main argument is that the District's condemnation effected a de facto division of the property into four "parcels." Although we fully appreciate that the eminent domain proceeding resulted in the physical separation of the four parts of the

---

[8] As we discuss in more detail below, although it is illegal for an owner to convey parts of a landholding in the absence of a recorded map (§ 66499.30, subds. (a) & (b)), such a conveyance is nonetheless effective to transfer title to the illegally conveyed portion. The grantee is not subject to criminal penalties and has the right, within one year of discovery, to void such a transfer (§ 66499.32, subd. (a)), but the local agency does not have a similar power. (*Clemons v. City of Los Angeles* (1950) 36 Cal.2d 95, 105; *Kalway v. City of Berkeley* (2007) 151 Cal.App.4th 827, 836.) Accordingly, as both a practical and legal matter, a division of property through an illegal conveyance, if not voided by the transferee, is effective to subdivide property.

[9] These conditions can be significant and could require, for example, construction of infrastructure that would be required for approval of a final or parcel map. (See Curtin et al., *California Subdivision Map Act and Development Process* (Cont.Ed.Bar 2d ed. 2001) §§11.20-11.21 (rev. 2015).)

8

Nunns' property, we disagree that this constituted a division within the meaning of the Act.

There is no question that the Nunns' property consists of four parts separated from each other by the strips of land owned by the District. The Nunns cannot pass from one part of their property to another without crossing someone else's property. And, as the Nunns correctly point out, the District's fee-simple ownership of its intersecting strips grants the District the ownership of all rights above and below the strips' surface.

But this practical reality does not mean that there was a division of the property within the meaning of the Act entitling the Nunns to a certificate of compliance for each of its four parts. The Nunns argue that the four parts qualify as separate parcels under the Act because they are separated. But neither the characterization nor the separation of the parts is determinative. Characterizing the parts of their property as parcels is of no legal consequence because no provision of the Act entitles real property to a certificate of compliance merely because it can be described as such. Section 66499.35 states that an owner of "real property" may request a determination by the local agency "whether the real property complies with the provisions of [the Act] and of local ordinances enacted pursuant to [the Act]." (*Id.*, subd. (a).) If the agency finds that the property complies, it must record a certificate stating "that the *division* of the real property complies with applicable provisions of [the Act] and of local ordinances enacted pursuant to [the Act]." (*Ibid*, italics added.) In other words, regardless of whether a piece of property can be characterized as a parcel, it is entitled to a certificate of compliance only if it was the result of a prior division recognized by the Act.

Further, a division within the meaning of the Act is not established just because parts of a property do not touch. Section 66424, for example, defines subdivision to mean "the division, by any subdivider, of any unit or units of improved or unimproved land, or any portion thereof, shown on the latest equalized county assessment roll as a unit or as contiguous units, for the purpose of sale, lease, or financing, whether immediate or future." And it goes on to state "[p]roperty shall be considered as contiguous units, even if it is separated by roads, streets, utility easement, or railroad

rights-of-way." (*Ibid.*) This language was applied by the Attorney General in 61 Opinions California Attorney General 299, in considering the impact of an irrigation canal owned in fee simple by the federal government that divided land under common ownership.[10] Observing that the term "contiguous" has "two ordinary meanings"— (a) physically in contact and (b) nearby—the Attorney General concluded that the latter better reflected the purposes of the Act. Accordingly, the opinion concluded that regardless of the federal government's strip of land, the number of proposed parcels on the land on both sides of the canal had to be counted together to determine which mapping requirement (a parcel or tentative/final map) applied. Although the map issue considered in the opinion differs from the issues before us, the opinion is instructive because it assumed that no subdivision had occurred simply by virtue of the canal property's transfer to the federal government, and it found that the physical separation of the property caused by the canal was not controlling. A leading commentator has observed that one of the "common mistakes" made under the Act is "[a]ssuming that roads, railroad tracks, and natural boundaries divide parcels." (Merritt, Jr., *Practicing Under the Subdivision Map Act: Eight Common Pitfalls* (Cont.Ed.Bar 1988) Real Property L.Rptr., 165.)

The Nunns insist that "[i]f the [four parts of their property] are indeed new, separate parcels of land . . . then they should also be treated as *lawfully created* parcels of land (i.e., created in compliance with the Subdivision Map Act)." (Italics in original.) But the argument conflates two separate concepts. There is no question that the four parts of their property were the lawful result of the eminent domain proceeding. But just because the property's separation occurred lawfully does not mean that the separation constituted a division within the meaning of the Act.

The Nunns also argue that it would be unfair to require them to proceed through the parcel map process because *they* did not separate the property into its four parts. But under the Act, what matters is not who caused property to be separated but whether a

_____

[10] Although not binding on this court, attorney general opinions are entitled to " 'considerable weight.' " (*Ennabe v. Manosa* (2014) 58 Cal.4th 497, 716, fn. 14.)

10

division occurred within the meaning of the Act. We note that the Nunns knowingly purchased the property in its present configuration, the $964,000 paid to the former owner compensated the owner for any loss of value caused by the property's separation, and the Nunns presumably paid a reduced price for the property because of the effects of the condemnation. (See *People v. Thompson* (1954) 43 Cal.2d 13, 18 [landowner whose property is divided by highway entitled to receive value of land condemned plus reduction in value of remainder due to severance of portion condemned].) We find nothing unfair in requiring the Nunns to comply with the same procedures for subdivision as other landowners.

2. The Condemnation Exemption Is Inapplicable.

The Nunns alternatively claim that they are entitled to certificates of compliance under the Act's exemption for property conveyed through condemnation proceedings. (§ 66428, subd. (a)(2).) This provision exempts from map requirements "[l]and conveyed to or from a governmental agency [or] public entity . . . for rights-of-way, unless a showing is made in individual cases, upon substantial evidence, that public policy necessitates a parcel map." The Nunns argue that the four parts of their property fall within this exemption because the condemnation proceeding from which they arose involved the conveyance of land to a governmental agency.

This argument is refuted, however, by the plain language of the statute. Subdivision (a)(2) states that "[a] parcel map shall not be required for [¶] . . . [¶] [l]and conveyed *to or from a governmental agency* [*or*] *public entity* . . . for rights-of-way." (Italics added.) The four parts of the Nunns' property were neither conveyed to nor from a public entity. Rather, they were not conveyed at all and remained in private ownership. True enough, no parcel map was required for the strips conveyed to the District under this exemption because they were conveyed to a government agency. But the exemption says nothing about real estate not transferred to or from the government, even though its boundaries may have been affected by the property that was transferred. Condemnation proceedings frequently reshape the boundaries of the remaining property, but nothing in

11

the Act suggests that the Legislature intended to exempt all such property from the map requirements.

Our conclusion that each of the four parts of the Nunns' tract is not entitled to a certificate of compliance under the Act's condemnation exemption is supported not only by the Act's plain language, but also by sound policy. The Act is designed to promote local control over real estate development, and the subdivision of property is a primary means for such development. There is no reason to believe that property reshaped by condemnation proceedings necessarily satisfies state and local land-use laws. Property is condemned for all kinds of reasons, many of which are entirely unrelated to the interests protected by the Act. The four parts of the Nunns' property were shaped by the routes chosen for relocating Vasco Road and for laying the pipelines. Although these routes likely made good sense for purposes of the road and pipeline, that does not mean the resulting four parts of the property automatically satisfy the objectives and purposes of the Act.

The Nunns also argue that the condemnation exemption should apply to property reshaped by a condemnation proceeding because the government's cost in those proceedings will be higher when those proceedings result in "illegal" parcels. We accept neither the premise nor conclusion of this argument. First, although property reshaped by condemnation proceedings may have a new boundary, the reshaped property is not illegal. Owners can sell their entire property with its new boundaries, or they can convey any part of it so long as they comply with the Act. (§ 66424.) Second, the government's condemnation costs are unaffected because the government is already required to compensate landowners when it acquires property and leaves a remainder with a diminished value. (See *People v. Thompson, supra,* 43 Cal.2d at p. 18.)

Finally, the Nunns argue that the condemnation exemption should apply to their parcels because a condemnation transfer is recognized as a "sale" of property, and a subdivision is defined under section 66424 as a division of land for the purposes of sale. (See, e.g., *People ex rel. Dept. Pub. Wks. v. County of Santa Clara* (1969) 275 Cal.App.2d 372, 376 [recognizing condemnation as sale].) But even if we were to

12

assume that a condemnation is a sale resulting in a qualified subdivision under section 66424, the only property entitled to the exemption would be the property "sold," which is the property conveyed to the government agency. Section 66424 provides no basis for expanding the scope of the exemption in subdivision (a)(2).

        3.     There Was No Division by Conveyance of the Four Parts of the Nunns' Property.

The Nunns argue that the four parts of their property should be recognized as having been created by conveyance under the Act. Although we recognize that a division of property within the meaning of the Act can occur by conveyance, we disagree that this principle bears on the four parts of the Nunns' property.

As we previously mentioned (fn. 8, *ante*), while a division of property can occur through a conveyance of a piece of property for which no map has been recorded and to which no statutory exemption applies, such a conveyance is illegal. (§ 66499.30, subds. (a) & (b).) The grantee of such a property has the right to void the conveyance within one year of its discovery (§ 66499.32, subd. (a)), but the local agency has no similar power. (*Clemons v. City of Los Angeles. supra,* 36 Cal.2d at p. 105; *Kalway v. City of Berkeley, supra,* 151 Cal.App.4th at p. 836 ["That a transfer is not authorized by the Act, or that it violates the Act, does not in and of itself allow an agency to seek and obtain cancellation of the deed through court action"]; *City of Tiburon v. Northwestern Pac. R.R. Co.* (1970) 4 Cal.App.3d 160, 180-181.) Rather, the local agency is limited to recording a notice of violation against the illegally conveyed property (§ 66499.36) and preventing further development if it "finds that development of such real property is contrary to the public health or the public safety." (§ 66499.34.) Even though such a conveyance is illegal, it effectively transfers title, and the transfer is binding on the grantee's successors in interest. (§ 66499.32, subd. (a).) Accordingly, as both a practical and legal matter, a conveyance of a part of a property in violation of the Act results in a division under the Act if not voided by the transferee.

None of this helps the Nunns, however, because the four parts of their property were not conveyed illegally. The only parcels conveyed at all as a result of the

13

condemnation proceeding were those taken by the District. The remainder of the property was untouched. It stayed under common ownership and was listed in a single deed before and after the condemnation proceedings and when it was legally conveyed to the Nunns.[11]

### 4. Attorney General Opinions.

The Nunns acknowledge that no California decision has ever held that parts of a property are entitled to certificates of compliance simply because the parts resulted from a condemnation proceeding, but they argue that opinions issued by attorneys general have recognized the principle. Our review of the opinions reveals that none is on point, and those that provide guidance support the conclusion that there has been no division within the meaning of the Act simply because an eminent domain proceeding has separated parts of the non-condemned property.

In 58 Opinions California Attorney General 593 (1975), the Attorney General considered whether contiguous parcels held by the same landowner could be sold individually without recording a new parcel map after a portion of each parcel had been lost to condemnation. The opinion concluded that they could not. It reasoned that under section 66499.30, it is unlawful to sell any parcel of real property until a parcel or final map has been recorded. According to the opinion, the parcels no longer satisfied section 66499.30 because the remaining parcels were no longer the same as those depicted in the map on file. (58 Ops.Cal.Atty.Gen., *supra*, at p. 594.) The opinion remarked that a new parcel map was required because "condemnation of a part of a parcel results in a 'division' of land." (*Id*. at pp. 594-595.)

But only so much can be read into that comment. First, as we have discussed, a condemnation *does* result in a division of the part of the property conveyed to the government entity. The Act exempts *that* division from the map requirement. Second,

---

[11] The Nunns also point out that the Act does not preclude the sale of a portion of a tract of land to satisfy a tax deficiency, resulting in a new parcel. In that event, however, a statute, Revenue and Taxation Code section 3691, specifically authorizes such a sale. (See 64 Ops.Cal.Atty.Gen. 814, 816-817 (1981).) The Nunns have cited no similar statute exempting their property from the Act.

14

whether a division within the meaning of the Act occurred with the non-condemned portions of the property was never an issue because the two parcels affected by the condemnation were already recorded as separate, contiguous parcels. Presumably, they had already been subdivided in compliance with the Act's map requirements, and the comment was simply a recognition that an updated parcel map was needed because the condemnation changed the property's boundaries. This, of course, indicates that the Nunns likewise need to obtain a parcel map.

In 86 Opinions California Attorney General 70 (2003), the Attorney General considered a large parcel recorded sometime before 1965, when a portion of it was condemned for the development of a reservoir. The reservoir separated two parts of the property by 700 feet of water with no access road to connect them, and these parts of the property had been assigned different parcel numbers by the county assessor. At the time of the condemnation, the county's ordinances did not regulate divisions of land creating fewer than five parcels. (*Id.* at pp. 70-71.) The opinion considered whether "the remaining two parcels of land were legally created as separate parcels for purposes of the Subdivision Map Act." (*Id.* at p. 70.) The opinion found that the governing statute was section 66412.6, subdivision (a), one of the Act's grandfather clauses, which states that "any parcel created prior to March 4, 1972, shall be conclusively presumed to have been lawfully created if the parcel resulted from a division of land in which fewer than five parcels were created and if at the time of the creation of the parcel, there was no local ordinance in effect which regulated divisions of land creating fewer than five parcels." As the statute was subsequently explained in *Fishback v. County of Ventura* (2005) 133 Cal.App.4th 896, "March 4, 1972, is the effective date of legislation adding the requirement of a parcel map to the [Act] for divisions of land into four or fewer parcels. [Citations.] Section 66412.6, subdivision (a) simply clarifies that parcels legally created without a parcel map are legal even after the parcel map requirement was added to the [Act]." (*Id.* at p. 904.) The opinion reasoned that the separation effected by the condemnation proceedings was outside the Act's map requirement because it occurred in 1965, at a time when such a separation was unregulated by the Act or local ordinance.

15

(86 Ops.Cal.Atty.Gen., *supra,* at pp. 71-72, fn. 3.)  Accordingly, the opinion reasoned that the owner was entitled to a certificate of compliance for each of the two remaining parcels.  (*Id.* at p. 72, fn. 4.)

In reaching its conclusion, the opinion expressly rejected an application of section 66424, which defines subdivision, because "no 'subdivision' is being proposed by the owner.  [Citation.]  The 'division' in question took place in 1965 when the owner's two new parcels of land were physically created by court order and the recording of a deed." (86 Ops.Cal.Atty.Gen., *supra*, at p. 73.)  In a relevant footnote, the opinion observed that, under the exemption of section 66428, subdivision (a)(2), current law does not require a parcel map for the conveyance of land for purposes of a right-of-way.  (86 Ops.Cal.Atty.Gen. at p. 73, fn. 5.)  "Of course," the opinion stated, "*new parcels that are created* [by *condemnation*] *but not conveyed to a governmental agency must comply with any applicable requirements of the Act,*" citing the 1975 opinion discussed above.  (*Ibid.*, italics added].)

The Nunns quote the portion of the opinion declining to apply section 66424 because "no [new] 'subdivision' is being proposed by the owner" (86 Ops.Cal.Atty.Gen., *supra*, at p. 73) to argue that certificates of compliance must be issued if no new subdivision is sought at the time of the request.  But this argument misses the critical timing of when the property was separated.  The separation occurred in 1965, before the enactment of the requirement of a parcel map for a subdivision of fewer than five units.  Thus, the opinion has no bearing on the Nunns' situation because the separation of their property into four parts occurred in 1997, well after the enactment in 1972 of the parcel-map requirement.

16

5.    The Four Parts of the Nunns' Property Are Not Entitled to
       Conditional Certificates of Compliance.

Finally, the Nunns argue that each of the four parts of their property is entitled, at a minimum, to a conditional certificate of compliance because section 66499.35, subdivision (b) states that the local agency "shall" issue such a certificate whenever a regular certificate of compliance is denied.  In doing so, they misconstrue the applicability of this section.

Subdivision (b) of section 66499.35 states that, "[i]f a local agency determines that the real property does *not* comply with the provisions of this division or of local ordinances enacted pursuant to this division, it *shall* issue a conditional certificate of compliance."  (Italics added.)  In that event, the local agency "may, as a condition to granting a conditional certificate of compliance, impose any conditions that would have been applicable to the *division* of the property at the time the applicant acquired his or her interest therein."  (*Ibid.*, italics added.)  The conditional certificate of compliance thereby serves as notice "that the fulfillment and implementation of these conditions shall be required prior to subsequent issuance of a permit or other grant of approval for development of the property."  (*Ibid.*)

This subdivision works in tandem with subdivision (a).  As we have explained, subdivision (a) allows an owner to obtain a certificate of compliance for a piece of property that has already been divided, but for which no final or parcel map has been recorded, by establishing that the property complies with the Act by, for example, falling within an exemption to the map requirement.  Subdivision (b), in turn, allows an owner to obtain a conditional certificate of compliance for a piece of property that has already been divided, but for which no map has been recorded *and* that does not comply with the Act.  But these sections apply only where there has been a division of the property.  As we have discussed, no such division occurred as a result of the eminent domain proceeding

17

affecting the Nunns' property, except for the parcels acquired by the District. Section 66499.35 therefore simply does not apply to the four parts of the Nunns' property.[12]

Giving meaning to section 66499.35's use of the word division is consistent with the section's legislative history. The section's statutory predecessor was enacted in response to *Keizer v. Adams* (1970) 2 Cal.3d 976, in which the Supreme Court considered the consequences of a conveyance of property in violation of the Act's map requirement. (See *Nishiyama v. Safeco Title Ins. Co.* (1978) 85 Cal.App.Supp.3d 1, 6.) The *Keizer* court required the local agency to consider the plaintiffs' application for a building permit " 'without regard' to the Subdivision Map Act" because, according to the court, the Act "does not require the innocent purchaser to suffer for a violation by his grantor, of which he has neither knowledge nor means of discovery." The court did, however, permit the enforcement of other local ordinances, as would apply to any lawfully created parcel. (*Keizer,* at pp. 980-981.) Two years later, the Legislature enacted former Business and Professions Code sections 11538.1, 11538.2, and 11538.3, the statutory predecessors to sections 66499.34, 66499.35, and 66499.36. (1972 Stats, ch. 706, §§ 2-4, pp. 1289-1290.) Former section 11583.3 allowed an owner of real property to request the issuance of a certificate of compliance certifying that the property complied with the Act. If the local agency concluded that the property did not comply, the agency was permitted to attach conditions to the certificate that would have been applicable at the time the owner acquired the property. (Former Bus. & Prof. Code, §§ 11538.1, 11538.3.) The present statute continues to embody *Keizer*'s pragmatic concern about legitimizing parcels, including those conveyed illegally but held by good-faith purchasers. A piece of property created through a means consistent with the Act is issued an ordinary certificate of compliance, while one that was created illegally is issued a conditional certificate. (§ 66499.35, subd. (f)(1)(E).) A purchaser of property subject to a conditional certificate of compliance is alerted to any legal constraints on the use of the property.

---

[12] Although section 66499.35 might allow the grant of a *single* certificate of compliance for the *whole* of the Nunns' property if there were a question whether it was created by a division, the Nunns have sought no such certificate.

18

Division Five of this court has already considered and rejected the argument that a conditional certificate of compliance must be issued for a piece of property simply because a regular certificate of compliance was requested and denied. (*Abernathy Valley, supra*, 173 Cal.App.4th 42.) In *Abernathy Valley*, a local agency denied the plaintiff's request for a certificate of compliance under a grandfather clause for a lot shown on a 1909 subdivision map. (*Id.* at pp. 45-46.) After the court found that the grandfather clause was inapplicable (*id.* at p. 53), it considered the plaintiff's alternative argument that the county was at least required to issue a conditional certificate of compliance for the lot. The plaintiff argued, as the Nunns argue here, that the county had only two alternatives in responding to a request for a certificate of compliance under section 66499.35: to grant it or to grant a conditional certificate. (*Abernathy Valley,* at p. 56.)

The court rejected the argument. It held that the Act does not require an agency to grant either a regular or conditional certificate of compliance when a property owner seeks "a determination of whether real property may be subdivided as proposed" but does not seek "a determination of whether a particular subdivision lot (which the applicant does not propose to subdivide further) complies with the Act." (*Abernathy Valley, supra,* 173 Cal.App.4th at p. 57.) We agree. Stated in our parlance, a certificate of compliance—whether regular or conditional—is only proper to legitimize a division of property that has already occurred within the meaning of the Act.[13]

The *Abernathy Valley* court reasoned that if a conditional certificate of compliance were required whenever property owners were denied their desire to subdivide property, the result would be to "effectively permit the subdivision of property without compliance" with the Act's map requirements. (173 Cal.App.4th at p. 58; see § 66499.35, subds. (b), (f)(1)(E).) The court accordingly concluded that "a local agency may deny an application for a certificate of compliance that seeks a determination that a

---

[13] Although the Act expressly authorizes the issuance of a single certificate of compliance for multiple parcels (§ 66499.35, subd. (f)(2)), such as multiple parcels acquired over time and eventually constituting a single landholding, it contains no similar authorization for the issuance of multiple certificates of compliance for a single parcel.

19

particular subdivision lot on the applicant's property complies with the Act, where the effect of issuing a certificate would be to effectively subdivide the property without complying with the Act." (*Abernathy Valley*, at p. 58.)  We agree with *Abernathy Valley*'s reasoning and conclusion.

We thus conclude that regular and conditional certificates of compliance are limited to legitimizing divisions of property that have already occurred, such as divisions covered by the Act's grandfather clauses or divisions resulting from a property's illegal conveyance.[14]  Because there was not a division of the four parts of the Nunns' property within the meaning of the Act, the Nunns are entitled to neither a regular nor conditional certificate of compliance for each of those parts.

DISPOSITION

The trial court's order granting the petition is affirmed.  The trial court is directed, on remand, to enter an appropriate judgment, if no such judgment has yet been entered. SMD may recover its costs on appeal.  (Cal. Rules of Court, rule 8.278, (a)(1), (2).)

_____

Humes, P.J.

We concur:

_____

Dondero, J.

_____

Banke, J.

_____

[14] These examples are not meant to be a definitive list of divisions within the meaning of the Act.



NUNN PARCEL

NUNN PARCEL

NUNN PARCEL

NUNN PARCEL

PARCEL 1
VASCO ROAD

PARCEL 3
CCWD ROW

PARCEL 2
CCWD ROW

PARCEL 1
VASCO ROAD

VASCO ROAD

WALNUT AVE.

WALNUT AVE.

LONGWELL ROAD

| CUNHA ENGINEERING INC. | CCWD CONDEMNATION EXHIBIT | SHEET |
|---|---|---|
| | 97-0098757-00 | 1 OF 1 |
| | NUNN/TAMAYO | JOB No. |
| BRENTWOOD | CALIFORNIA | 206014 |

165

21

| | |
|---|---|
| Trial Court: | Contra Costa County Superior Court |
| Trial Judge: | Honorable Laurel Brady |
| Counsel for Appellant and Real Party in Interest Ronald E. Nunn: | McKenna Long & Aldridge LLP, Denis F. Shanagher, Andrew S. Azarmi; Allen Matkins Leck Gamble Mallory & Natsis LLP, David Blackwell; Nossaman LLP, Michael Patrick Durkee |
| Counsel for Respondent and Defendant Save Mount Diablo: | Shute, Mihaly & Weinberger LLP, Winter King, Laura D. Beaton |
| Counsel for Defendant Contra Costa County: | Office of Contra Costa County Counsel, Stephen Michael Siptroth |