Filed 1/26/21  Smith v. City of Santa Barbara CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| GREG SMITH ET AL., <br><br> Petitioners and Appellants, <br><br> v. <br><br> CITY OF SANTA BARBARA, ET AL., <br><br> Respondents; <br><br> HERBERT BARTHELS ET AL., <br><br> Real Parties in Interest. | 2d Civil No. B301299 <br> (Super. Ct. No. 18CV01590) <br> (Santa Barbara County) |

Real Parties in Interest Herbert Barthels and the Herbert E. Barthels Trust (Barthels) bought the last undeveloped oceanfront lot in Santa Barbara (City) in 1976.  Barthels's plans to build a house stalled in 1989 when the City determined he lacked legal access to the property.  The City recently changed its position and revived Barthels's plans.  Neighbors and appellants

Greg and Judith Smith (the Smiths) opposed development and sought a traditional writ of mandate challenging the City's access determination. The trial court denied their petition.

We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The Mesa neighborhood overlooks the Pacific Ocean from the bluffs above Santa Barbara Harbor. Barthel's lot sits on the waterfront near the Mesa's centerline, just a few hundred feet from the city's historic lighthouse. One accesses the lot by taking El Camino de la Luz to its eastern cul-de-sac terminus, entering a driveway, then following a narrow private road that bends southward toward the ocean. At the end is 1837 ½ El Camino de la Luz. The Smiths own the oceanfront house just west of Barthels's lot at 1839 El Camino de la Luz.

The late Gertrude Eaton created 1837 ½ by splitting off 1837's southern half in 1958. Eaton's neighbors, including the former owner of the Smith's property, sent letters to the Planning Commission supporting her split request. Minutes from the commission hearings, however, reflect concerns among its members about the private road's width and service capacity. The Commission recommended the City Council deny the request. Eaton appeared personally at the next council meeting and explained why she believed the existing 15-foot easement would provide adequate access. The council granted her request despite the commission's denial recommendation, noting "that several of the neighbors wrote letters . . . urging approval of the requested division of property, and the granting of a variance in this case." Eaton eventually sold 1837 ½. Barthels bought the undeveloped lot in 1976.

Barthels first applied for a development permit in 1989. Neighbors objected on the grounds his project would further

2

burden the already strained private road.  He learned during this process that portions of his easement measured only 7.5 feet wide.  When the City refused to issue a building permit, Barthels sued his title insurer for negligence and obtained a damages award of $31,524 plus the lot's purchase price adjusted for inflation.[1]

Barthels continued his development efforts after obtaining the damages award.  He secured a water meter and worked with the fire department to resolve safety issues.  The easement, however, remained the project's Achilles heel.  A letter from the City Attorney's office in 1997 concluded that "the required legal access to the parcel is not clearly and definitely established from a legal standpoint."  The City reiterated its refusal to process his development application because the lot "[did] not appear to satisfy a fundamental condition of its original creation, the existence of the 15 foot wide access easement for the full length necessary for vehicular access from the public street to the parcel."  Barthels requested a conditional certificate of compliance stating exactly what was required to make his lot legal.  The City issued a certificate in 1999 stating he would need to "provide evidence, satisfactory to the City Engineer that the owner . . . substantially possesses the required amount of legal access that formed the basis of the originally approved lot split."

Barthels filed a second development application in 2002.  Neighbors again voiced their belief that the existing easement would not support an additional home.  They also accused the late Eaton of misrepresenting the easement's width when she

---

[1] We affirmed the superior court's calculation of Barthels's damages in *Barthels v. Santa Barbara Title Co.* (1994) 28 Cal.App.4th 674.  The appeal did not address the substance of Barthels's negligence claims.

addressed the City Council in 1958 – an act they alleged would invalidate the lot split. These objections led Barthels to sue the owners of the lots served by the private road as a way to perfect his access rights.[2] They settled the case after reaching an agreement about the easement's precise boundaries: 15 feet wide along its northern half; 7.5 feet wide at a "pinch point" in the middle; and 10 feet wide along the southern half leading to Barthels's lot. The court entered a stipulated judgment to this effect in 2009.

Barthels continued working through the environmental review process. The Smiths began resisting the lot's development immediately after buying their house in 2010. Trenching performed at the behest of the project's geotechnical engineers prompted the Smiths to file a complaint for injunctive relief in 2012.[3] The case lasted two years. When work resumed, the Smiths submitted formal comments to the Planning Commission reiterating their concerns about access, the lot's legality, and impacts to nearby Lighthouse Creek. They appeared at Planning Commission hearings and submitted a lengthy report from a land use expert opining that Barthels did not and could not satisfy specific conditions set forth in the City's 1999 conditional certificate of compliance.

City Engineer Brian D'Amour decided Barthels satisfied the conditions. D'Amour explained his findings in a memorandum to the Planning Commission in February of 2018. He concluded Barthels now "'substantially possesse[d] the

_____

[2] *Barthels v. Franco, et al.* (Super. Ct. Santa Barbara County, 2008, No. 1268293).

[3] *Smith v. Barthels, et al.* (Super. Ct. Santa Barbara County, 2012, No. 1414447).

4

required amount of legal access that formed the basis of the originally approved lot split.'" D'Amour noted the easement boundaries established by Barthels and his neighbors in 2009 matched those reflected in the lot split map submitted by Eaton when she applied for split in 1958. His memorandum cited several exhibits, including the certificate, records from the 1958 lot split proceedings, the City Attorney's 1997 letter, and the 2009 stipulated judgment.

The Smiths challenged D'Amour's determination by petitioning for a traditional writ of mandamus. They contended D'Amour erred by disregarding key evidence and assuming the accuracy of Eaton's lot split map. In addition, they requested a finding that Barthels's representations in his title insurance case about his lack of legal access estopped him from later asserting those rights. The trial court denied the petition and entered judgment against the Smiths.

DISCUSSION

A. *D'Amour's Discretionary Access Determination Is Not Subject to Traditional Writ Review*

"A writ of mandate may be issued by any court . . . to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station." (Code Civ. Proc., § 1085, subd. (a).) "Generally, mandamus is available to compel a public agency's performance or to correct an agency's abuse of discretion when the action being compelled or corrected is ministerial." (*AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health* (2011) 197 Cal.App.4th 693, 700, citing *Rodriguez v. Solis* (1991) 1 Cal.App.4th 495, 501.) A "'ministerial act'" is one in which "'a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his [or her] own judgment

5

or opinion concerning such act's propriety or impropriety, when a given state of facts exists.'" (*Ibid.*, citing *Rodriguez* at pp. 501-502.) "Mandamus does not lie to compel a public agency to exercise discretionary powers in a particular manner, only to compel it to exercise its discretion in some manner." (*Id.* at pp. 700-701.)

We categorize D'Amour's access determination as a discretionary act performed in connection, and in compliance, with the City's authority under the Subdivision Map Act (Act) to impose conditions on the development of local subdivisions. (See *AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health, supra*, 197 Cal.App.4th at p. 701 [whether duty imposed by statute is ministerial or discretionary "is a question of statutory interpretation"].) The Act vests local agencies with authority to determine whether real property complies with the Act's provisions and land use ordinances. (Gov. Code, § 66499.35, subd. (a); see *Save Mount Diablo v. Contra Costa County* (2015) 240 Cal.App.4th 1368, 1377 ["The Act 'grants to local governments the power to regulate the manner in which their communities grow'"].) Issuing a conditional certificate of compliance notifies the owners of a non-compliant property how they can bring the property into compliance and thereby seek the permits or other grants required to begin development. (Gov. Code, § 66499.35, subd. (b).)

The City issued Barthels a conditional certificate of compliance in 1999. The certificate identifies the City Engineer as the official responsible for deciding whether 1837 ½ "possessed the amount of required legal access that formed the basis of the City's approval of the lot split in 1958." The Smiths do not allege D'Amour declined to exercise his discretion or failed to perform a ministerial duty. They allege he exercised his discretion

*incorrectly* by, for example, relying on the lot split map and disregarding Eaton's alleged lies to council members in 1958. These allegations only highlight how D'Amour's determination was a product of his judgment as City Engineer and not his "obedience to the mandate of legal authority." As such, it lies outside the purview of traditional mandate under Code Civ. Proc., section 1085.

### B. The Trial Court's Denial of the Petition Was Supported by Substantial Evidence

Though the trial court need not have considered the petition on its merits, it ruled correctly when it did so. "'In reviewing a trial court's judgment on a petition for writ of ordinary mandate, we apply the substantial evidence test to the trial court's factual findings.'" (*Klajic v. Castaic Lake Water Agency* (2001) 90 Cal.App.4th 987, 995-996, citing *Kreeft v. City of Oakland* (1998) 68 Cal.App.4th 46, 53.) "Thus, foundational matters of fact are conclusive on appeal if supported by substantial evidence." (*Klajic*, at p. 996, citing *Clark v. City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1169-1170.) We conclude the trial court's ruling met this standard. It correctly denied the petition and entered judgment against the Smiths. "[W]e need not disturb the ruling when it is correct in law on other grounds." (*Pogosyan v. Appellate Division of Superior Court* (2018) 26 Cal.App.5th 1028, 1036 citing *People v. Smithey* (1999) 20 Cal.4th 936, 971-972.)

The absence of a verbatim transcript or precise references to identifiable demonstrative exhibits from 1958, such as the "plot map" mentioned by commissioners and council members, required D'Amour to reconstruct the basis of historic decisions and reconcile them with subsequent legal developments. The trial court carefully reviewed D'Amour's decision and the 1600-

7

page administrative record lodged with the petition. Its statement of decision cited all documents the Smiths used to support their position, including the City Attorney's 1997 letter, court filings, and most significantly, the minutes and reports relating to Eaton's lot split request in 1958. D'Amour and the trial court did not reach a result contrary to the evidence, as the Smiths argue, but a result contrary to the Smiths' *interpretation* of this evidence. We resolve such conflicts of disputed fact in favor of Barthels as the prevailing party. (*Public Employment Relations Bd. v. Bellflower Unified School Dist.* (2018) 29 Cal.App.5th 927, 939, citing *Hayes v. Temecula Valley Unified School Dist.* (2018) 21 Cal.App.5th 735, 746.)

### C. Judicial Estoppel Does Not Apply Under These Circumstances

The Smiths contend the trial court erred by not addressing whether the doctrine of judicial estoppel prevents Barthels from asserting his legal access to 1837 ½. The positions Barthels asserted in his title insurance case, they allege, contradict those asserted in these writ proceedings. The contention is moot considering traditional writ review is not available. If it were, any error was harmless because Barthels positions were neither "inconsistent" nor taken "in judicial or quasi-judicial administrative proceedings." (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183.)

Barthels sued his title insurer after the City refused to process his first development permit application in 1989. The positions he took in that case predated the City's conditional certificate of compliance by a decade and the stipulated judgment by two decades. His newfound optimism flows from an altered legal landscape. We do not consider Barthels' current positions "inconsistent" with those taken under such different

8

circumstances so long ago.  Nor were those positions taken in the context of a judicial or quasi-judicial administrative proceeding. Barthels asked the City Engineer to determine whether the conditions of the 1999 certificate of compliance were satisfied. The City Engineer answered in the affirmative.  No administrative hearing occurred and none was required to make this discretionary decision.

That Barthels must defend his access rights 30 years hence would only strengthen the younger Barthels' claims against his title insurer.  We doubt the trial court would consider his renewed attempts to establish access as behavior that could "'"result in a miscarriage of justice"'" and thereby warrant the extraordinary remedy of judicial estoppel.  (*Blix Street Records, Inc. v. Cassidy* (2010) 191 Cal.App.4th 39, 46-48, citing *Levin v. Ligon* (2006) 140 Cal.App.4th 1456, 1468 [applying doctrine is discretionary even when all factors present].)

DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

9

Colleen K. Sterne, Judge
Superior Court County of Santa Barbara

_____

Venskus & Associates, Sabrina Venskus and Rachael Kimball, for Petitioners and Appellants Greg Smith and Judith Smith.

No appearance for Defendants and Respondents City of Santa Barbara and Brian D'Amour.

Janet K. McGinnis for Real Parties in Interest and Respondents Herbert Barthels and Herbert E Barthels Trust.