[No. H011152. Sixth Dist. Aug. 10, 1994.]

LAKEVIEW MEADOWS RANCH, Plaintiff and Respondent, v.
COUNTY OF SANTA CLARA, Defendant and Appellant.

594

**COUNSEL**

Steven M. Woodside, County Counsel, and James E. Lewis, Deputy County Counsel, for Defendant and Appellant.

Nossaman, Guthner, Knox & Elliott and James P. Corn for Plaintiff and Respondent.

OPINION

MIHARA, J.—Plaintiff acquired title to thousands of acres of ranchland in southern Santa Clara County in 1965. Though not separately described in the deed, the three parcels at issue herein were part of the land included in this 1965 grant deed, and the deed did not purport to merge the separate and distinct individual parcels within the deeded property. In 1991, plaintiff applied for certificates of compliance with the Subdivision Map Act pursuant to Government Code section 66499.35 for a number of parcels including the three at issue herein. These three parcels were designated as parcel 4903, parcel 4909 and parcel 4911. Defendant County of Santa Clara (hereafter the County) denied these three applications. Plaintiff then petitioned for a writ of mandate from the superior court. The superior court issued an alternative writ, and the County filed an answer in which it admitted that two of the three parcels had been created prior to 1893. Plaintiff's petition was granted, and judgment was entered directing the issuance of a peremptory writ of mandate. A writ of mandate issued commanding the County to issue certificates of compliance for the three parcels. The County appeals. For the reasons expressed below, we affirm the judgment.

ANALYSIS

A. *Pre-1893 Creation of Parcels*

The County concedes that parcel 4909 and parcel 4911 were originally created prior to the 1893 enactment of regulations governing the subdivision of land. Parcel 4909 "was created by deed from individuals named Murphy to individuals named Ashworth dated January 3, 1882 . . . ." Parcel 4911 was originally part of a patent to Southern Pacific Railroad (SP) and was subsequently deeded by SP to one of plaintiff's predecessors in title on January 16, 1892. However, the creation of parcel 4903 was, and continues to be, the subject of considerable dispute between the parties. Plaintiff alleged in its petition that parcel 4903 had been "created by a patent from the United States of America to Southern Pacific Railroad dated October 7, 1891." The County denied this allegation in its answer. The trial court implicitly found that parcel 4903 had been created by the 1891 federal patent. The County claims that this finding was erroneous as a matter of law. We do not agree.

The record contains both the 1891 federal patent by which SP acquired title to parcel 4903 and a map showing where parcel 4903 was located on the federal survey map to which the federal patent refers. Federal survey maps were prepared to facilitate the conveyance of land after California achieved

statehood. (*John Taft Corp.* v. *Advisory Agency* (1984) 161 Cal.App.3d 749, 754 [207 Cal.Rptr. 840].) "The survey established a grid system oriented to north and south meridians and utilized six-mile square townships as its basic building blocks. [¶] The townships are divided into 36 sections, each theoretically 1 mile square." (*Ibid.*; 43 U.S.C. § 751.) These sections are laid out on federal survey maps. Parcel 4903 is an approximately 40-acre lot in the southeast corner of section 15 of "Township Nine, Range Four." The 1891 federal patent by which SP acquired parcel 4903 specifically identifies this lot as lot 16 of section 15 of "Township Nine, Range Four." Although the 1891 federal patent also conveyed numerous other parcels to SP, none of these other parcels are contiguous to parcel 4903. The only other parcels in "Township Nine, Range Four" which were conveyed by this 1891 federal patent to SP were portions of sections 1 and 11 and all of sections 13, 24, 25 and 27. The only sections of "Township Nine, Range Four" which are contiguous to parcel 4903 are sections 14, 15, 22 and 23.

■ Relying primarily on *Taft*, the County argues that parcel 4903 was not "created" or "subdivided" by the 1891 federal patent which conveyed title to parcel 4903 to SP. The County's reliance on *Taft* is misplaced as *Taft* has no application to the facts of this case. The issue in *Taft* was whether a United States Survey Map "subdivided" land for Subdivision Map Act purposes. (*John Taft Corp.* v. *Advisory Agency, supra,* at p. 751.) The three contiguous "lots" at issue in *Taft* were identified by township, section and lot numbers on a United States Survey Map in 1878. These three "lots" were subsequently conveyed by reference to the United States Survey Map. (*Id.* at p. 751.) The three "lots" were always conveyed as a group until Taft acquired them. (*Id.* at p. 752.) After acquiring title to these three "lots," Taft separately conveyed first one lot and then another to a third party. It retained the third lot. The County Advisory Board claimed that Taft's conveyances were illegal because they did not comply with the Subdivision Map Act. (*Id.* at p. 752.) The only issue discussed on appeal was whether the *United States Survey Map* had "subdivided" the land into separate lots. "[U]nless the conveyances were exempt because the lots were established as separate parcels by the United States Survey Map filed in 1878, each conveyance constituted an illegal subdivision by Taft." (*Id.* at p. 753.) The appellate court held that United States Survey Maps do not "subdivide" land or "create" lots within the meaning of the Subdivision Map Act. (*Id.* at pp. 753-756.)

*Taft* is inapposite here because plaintiff did not and does not claim that a United States Survey Map "created" parcel 4903 by subdividing units of land. Plaintiff alleged and proved that parcel 4903 was "created" when it was separated from the other units of land with which it was contiguous by the

1891 federal *patent* which conveyed title to parcel 4903 to SP. " 'Subdivision' means the division . . . of any unit or units of improved or unimproved land . . . for the purpose of sale, lease or financing . . . ." (Gov. Code, § 66424.) Hence, land is "subdivided" when one unit is separated from the contiguous units surrounding it. Because the federal patent which conveyed parcel 4903 to SP did not convey any of the contiguous parcels surrounding parcel 4903 to SP, this conveyance was a "subdivision" of land which "created" parcel 4903 as a separate lot. Accordingly, parcel 4903 was created by a lawful subdivision of land in 1891.

## B. *Plaintiff's Entitlement to Certificates of Compliance*

"Any person owning real property . . . may request, and a local agency shall determine, whether the real property complies with the provisions of [the Subdivision Map Act] and of local ordinances enacted pursuant thereto. Upon making the determination, the city or the county *shall* cause a certificate of compliance to be filed . . . ." (Gov. Code, § 66499.35, subd. (a), italics added.) "If a local agency determines that the real property does not comply with the provisions of [the Subdivision Map Act] or of local ordinances enacted pursuant thereto, it *shall* issue a certificate of compliance or a conditional certificate of compliance. A local agency may, as a condition to granting a certificate of compliance, impose any conditions which would have been applicable to the division of the property at the time the applicant acquired his or her interest therein, and which had been established at that time by [the Subdivision Map Act] or local ordinance enacted pursuant thereto . . . ." (Gov. Code, § 66499.35, subd. (b), italics added.)

The County claimed below that it was not required to issue certificates of compliance for the three parcels because the parcels did not meet the requirements of the Subdivision Map Act. They repeat this claim on appeal. The Subdivision Map Act[1] (hereafter the SMA) regulates the subdivision of real property. Under the provisions of the SMA, land cannot be subdivided without obtaining local agency approval of a parcel map which meets the requirements of the SMA and any local ordinances. (Gov. Code, §§ 66458, subd. (a), 66499.30, subds. (a), (b) and (c).) To enforce this rule, the SMA prohibits the sale, lease or financing of parcels unless the requirements of the SMA have been met for that parcel. However, these requirements "do not apply to any parcel or parcels of a subdivision . . . sold . . . in compliance with or exempt from any law (including a local ordinance), regulating the design and improvement of subdivisions in effect at the time the subdivision was established." (Gov. Code, § 66499.30, subd. (d).)

---

[1]The Subdivision Map Act is division 2 of title 7 of the Government Code. (Gov. Code, § 66410 et seq.)

 The County claims that the SMA's exemption of parcels "in compliance with or exempt from any law . . . regulating the design and improvement of subdivisions in effect at the time the subdivision was established" does not exempt from the SMA parcels created prior to the 1893 enactment of California's first subdivision law.[2] According to the County, plaintiff's parcels could not have been "in compliance with or exempt from any law . . . in effect at the time" of their creation because there were no laws regulating the creation of subdivisions at the time of the pre-1893 creation of these three parcels. The County's interpretation of this language is at odds with the California Supreme Court's interpretation of similar language in Government Code section 66451.10, subdivision (a). That statute provides that contiguous parcels are not automatically merged by virtue of common ownership if the parcels were "created under the provisions of [the SMA] or any prior law regulating the division of land, or a local ordinance enacted pursuant thereto, or . . . were not subject to those provisions at the time of their creation . . . ." In *Morehart* v. *County of Santa Barbara, supra,* 7 Cal.4th 725, the California Supreme Court construed the "not subject to" language in Government Code section 66451.10, subdivision (a) to extend to parcels created before 1893 when there were no laws regulating subdivisions. (*Morehart* at pp. 761-762.)

The County tries to draw a distinction between parcels "exempt from any law" regulating subdivisions and parcels "not subject to" the provisions of any laws regulating subdivisions. However, we are unable to find any basis for this distinction. "Exempt" and "not subject to" have essentially the same meaning, and it is readily apparent that both statutes were enacted to preserve the validity of lawfully created parcels. Plaintiff's parcels were "lawfully created." "For purposes of [the SMA] or of a local ordinance enacted pursuant thereto, any parcel created prior to March 4, 1972, shall be conclusively presumed to have been *lawfully* created if at the time of the creation of the parcel there was compliance with any local ordinance or there was no local ordinance in effect which regulated divisions of land creating fewer than five parcels." (Gov. Code, § 66412.6, subd. (a), italics added.) As the three parcels herein at issue were created prior to the 1893 enactment of any laws regulating the creation of subdivisions, the conclusive presumption of Government Code section 66412.6, subdivision (a) applies, and we must presume that these three parcels were "lawfully created." Government Code section 66499.30, subdivision (d) excludes such parcels from compliance with the SMA.

 The County also asserts that the three separate parcels at issue herein were "merged" with contiguous land by reason of common ownership

---

[2]California's first subdivision map statute was enacted in 1893. (*Morehart* v. *County of Santa Barbara* (1994) 7 Cal.4th 725, 761 [29 Cal.Rptr.2d 804, 872 P.2d 143].)

sometime prior to plaintiff's acquisition of title. This contention is addressed by Government Code section 66451.10. "[T]wo or more contiguous parcels or units of land which have been created under the provisions of this division, or any prior law regulating the division of land, or a local ordinance enacted pursuant thereto, or which were not subject to those provisions at the time of their creation, shall not be deemed merged by virtue of the fact that the contiguous parcels or units are held by the same owner . . . ." (Gov. Code, § 66451.10.) "If, when the parcels were created, no land-division provisions were in existence, the parcels necessarily 'were not subject to those provisions at the time of their creation.' " (*Morehart* v. *County of Santa Barbara, supra,* 7 Cal.4th at p. 761.) Plaintiff's three parcels were created prior to the enactment of any land-division regulations. Hence, under Government Code section 66451.10, common ownership of these parcels and contiguous land did not result in merger.

Furthermore, the record contains no evidence that anything other than common ownership could have resulted in merger of these three parcels with contiguous land. "Absent the express written statement of the grantor contained therein, the consolidation of separate and distinct legal descriptions of real property contained in one or more deeds . . . patents . . . or other instruments of conveyance or security documents, into a subsequent single deed . . . does not operate in any manner to alter or affect the separate and distinct nature of the real property so described in the subsequent single instrument of conveyance . . . ." (Civ. Code, § 1093.) There was no evidence of any such statement in any prior deed in the chain of title to these parcels. The 1965 deed does not contain such a statement.

As the three parcels were lawfully created prior to the enactment of any laws governing subdivision of land and the parcels did not subsequently merge with other contiguous land, the parcels are exempt from the requirements of the SMA, and plaintiff was entitled to certificates of compliance as a matter of law.

CONCLUSION

The judgment is affirmed.

Premo, Acting P. J., and Wunderlich, J., concurred.