# IN THE SUPREME COURT OF CALIFORNIA

ALVIN COX, as Trustee, etc.,
Plaintiff and Appellant,

v.

CITY OF OAKLAND,
Defendant and Respondent.

S280234

First Appellate District, Division One
A162465

Alameda County Superior Court
RG20068131

January 23, 2025

Chief Justice Guerrero authored the opinion of the Court, in which Justices Corrigan, Liu, Kruger, Groban, Jenkins, and Evans concurred.

COX v. CITY OF OAKLAND

S280234

Opinion of the Court by Guerrero, C. J.

The Subdivision Map Act (the Act; Gov. Code, §§ 66410–66499.41)[1] "is 'the primary regulatory control' governing the subdivision of real property in California." (*Gardner v. County of Sonoma* (2003) 29 Cal.4th 990, 996 (*Gardner*).) In general, the Act requires a landowner wanting to divide real property to first seek local governmental approval of a map detailing various aspects of the proposed subdivision. (*Gardner*, at p. 997.) Such approval can only be obtained after a local agency conducts an "extensive review" of the proposed subdivision with respect to numerous land use and development criteria. (*Ibid.*) To enforce the important public policies furthered by such review, the Act prohibits the sale, lease, or financing of any parcel of subdivided real property until an approved map is recorded. (*Gardner*, at p. 999.) The filing of such a map was formerly only required when dividing land into five or more parcels during a one-year period. (See, e.g., Stats. 1929, ch. 837, § 1, p. 1791.) But the Legislature amended the Act, effective March 4, 1972, to require the filing of a "parcel map" when dividing land into fewer than five parcels. (Stats. 1971, ch. 1446, § 5, pp. 2854–2855; see *Fishback v. County of Ventura* (2005) 133 Cal.App.4th 896, 904 (*Fishback*).) Currently, with some exceptions, pursuant to section 66426, a "tentative and

_____

[1] Subsequent undesignated statutory references are to the Government Code.

1

final map shall be required for all subdivisions creating five or more parcels," and a "parcel map" is generally required for subdivisions involving four or fewer parcels (*id.*, subd. (f); see § 66428).

Modern-day recordation of an approved map under the Act ordinarily creates the parcels depicted on the map. (*Gardner*, *supra*, 29 Cal.4th at p. 1002.) But where a subdivision map was recorded prior to 1893 — the first year of statewide regulation of the subdivision of real property in California — a lot generally obtained no independent legal status based on such depiction on an antiquated map. (*Id.* at p. 1001.) The recordation of an antiquated map did not itself divide the land or create the separately identified parcels. Instead, a lot depicted on an antiquated map generally gained independent legal status as a separate parcel when the owner "conveyed the lot separately from the surrounding lands." (*Ibid.*)

Section 66412.6, subdivision (a) (section 66412.6(a)) confirms the legality of parcels lawfully created by such historic conveyances. Specifically, section 66412.6(a) establishes a conclusive presumption of the legality of any parcel "created prior to March 4, 1972 . . . if the parcel resulted from a division of land in which fewer than five parcels were created" and "there was no local ordinance in effect which regulated divisions of land creating fewer than five parcels." Thus, section 66412.6(a) provides that lawful parcels "created" by a "division of land" prior to the effective date of the Act's parcel map filing requirement continue to be lawful parcels. (*Fishback*, *supra*, 133 Cal.App.4th at p. 904.)

In this case, we consider the circumstances under which section 66412.6(a)'s requirement of past "creat[ion]" may be

satisfied by historical conveyances from a grantor to a grantee at common law. A landowner claims that a conveyance occurring prior to March 4, 1972 — that identified the property being conveyed as contiguous land described as Lot 18, Lot 17, and a portion of Lot 16 on an antiquated subdivision map — created separate parcels consisting of each of the conveyed lots within the meaning of section 66412.6(a). Specifically, the landowner maintains that the conveyance "created three separate parcels" through a "division of land" under section 66412.6(a), and it seeks to confirm Lot 18 as a separate legal parcel. After the trial court rejected the landowner's contention, the Court of Appeal agreed with the landowner and concluded that Lot 18 was a parcel entitled to the conclusive presumption of legality under section 66412.6(a).[2] (See *Cox v. City of Oakland* (2023) 91 Cal.App.5th 850, 870–871 (*Cox*).)

In reviewing the Court of Appeal's decision, we consider whether the landowner is correct that the conveyance at issue created three separate parcels for purposes of section 66412(a) — consisting of Lot 18, Lot 17, and a portion of Lot 16 — rather than a single parcel encompassing all three lots. We conclude the Court of Appeal misperceived the meaning of section 66412.6(a) and therefore erred in holding that Lot 18 constitutes a lawful separate parcel. As explained below, the phrase "division of land" in section 66412.6(a) should be interpreted in light of similar language contained in the Act's general definition of "subdivision" provided in section 66424. Properly understood, when applied to a common law conveyance

---

[2] We need not consider the statute's requirement of the absence of a relevant local regulatory ordinance because it is undisputed that this requirement was met in this case.

from a grantor to a grantee, the conveyance of one portion of an original parcel constitutes a division under section 66412.6(a) if the conveyance "create[s]" a new parcel comprised of the conveyed portion of property. However, for purposes of section 66412.6(a), a conveyance does not "create[]" multiple parcels merely by referring separately to lots of the contiguous property being conveyed.

Because Lot 18 was always conveyed together with contiguous land, it has never been separately conveyed. The mere use of multiple lot numbers in the description of property being conveyed does not amount to a "division" of land that "create[s]" parcels for each of the individual lots. (§ 66412.6(a).) Thus, Lot 18 was never itself a parcel "created" as a result of "a division of land" during the time period specified by the statute. (*Ibid.*) Accordingly, we reverse the Court of Appeal's judgment.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.

The land at issue was initially depicted as Lot 18 on a subdivision map entitled "[M]ap of San Antonio" (Map), recorded in 1869.[3] (*Cox, supra,* 91 Cal.App.5th at p. 852.) The Map depicts numerous "blocks," each containing many smaller units of land denominated as "lots." (*Ibid.*)

---

[3] Because many of the relevant chain of title documents in the record are either illegible or difficult to read and the parties do not dispute the relevant facts, our factual background is drawn primarily from the Court of Appeal's opinion. (See *Cox, supra,* 91 Cal.App.5th at pp. 852–856.)

After the Map was recorded, Lot 18 was conveyed several times by name, along with various other contiguous lots.[4] (See *Cox*, *supra*, 91 Cal.App.5th at pp. 852–853, fns. 3–9.) In 1944, Lot 18, together with Lot 17 and a portion of Lot 16, were conveyed in a single deed by a single grantor to a husband and wife as joint tenants.[5] No other conveyances occurred prior to the March 4, 1972 effective date of the Act's parcel map filing requirement. Many years later, in 2015, plaintiff acquired this same property (Lots 18 and 17 and part of Lot 16) by a single deed. (*Cox*, at p. 853.)

**B.**

Plaintiff applied for a certificate of compliance[6] requesting that the City of Oakland (City) certify that Lot 18 was a separate parcel that had been legally created prior to March 4,

---

[4] For example, an 1887 conveyance described the property being conveyed as follows: " 'Lots Fifteen, Sixteen, Seventeen, and Eighteen (15, 16, 17, and 18) in Block No. Sixty Six (66) of what was formerly the Town of San Antonio as per Map thereof,' followed by a mete[s] and bounds description that encompassed all four lots." (*Cox*, *supra*, 91 Cal.App.5th at p. 853, fn. 6.)

[5] Although the Court of Appeal stated that the 1944 deed transferred the property to a singular "grantee" (*Cox*, *supra*, 91 Cal.App.5th at p. 853), the record indicates that the deed transferred the property to a husband and wife as joint tenants. However, for the reasons explained in footnote 23 *post*, we conclude the discrepancy is immaterial.

[6] Section 66499.35, subdivision (a) authorizes a real property owner to ask a local agency to determine whether the owner's property complies with the provisions of the Act and local ordinances enacted pursuant to the Act and, if so, to issue a certificate of compliance that establishes that the parcel can be sold, leased, or financed in compliance with the Act. (*Gardner*, *supra*, 29 Cal.4th at p. 995.)

1972.  After the City denied the application, plaintiff filed a petition for writ of mandate asking that the trial court direct the City to issue the certificate.  The trial court denied the petition. plaintiff appealed.  The Court of Appeal reversed the judgment and remanded the matter to the trial court with directions to grant the petition and issue a writ requiring the City to issue a certificate of compliance for Lot 18.  (*Cox*, *supra*, 91 Cal.App.5th at p. 871.)

We granted the City's petition for review.

## II.  DISCUSSION

The City claims the Court of Appeal erred in concluding that plaintiff was entitled to a certificate of compliance establishing Lot 18 as a lawful parcel pursuant to section 66412.6(a).

The City maintains that Lot 18 has never been created as a separate parcel under the Act because it was never *separately conveyed* from contiguous land.  Plaintiff, in turn, contends that Lot 18 was so created through a conveyance that *separately described* Lot 18 as one of a group of lots conveyed.  We agree with the City.

### A.

The Act "has three principal goals:  'to encourage orderly community development, to prevent undue burdens on the public, and to protect individual real estate buyers.'  [Citation.] It 'seeks "to encourage and facilitate orderly community development, coordinate planning with the community pattern established by local authorities, and assure proper improvements are made, so that the area does not become an undue burden on the taxpayer." ' " (*Pacific Palisades Bowl*

*Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 798–799 (*Pacific Palisades*).)

"The Act 'grants to local governments the power to regulate the manner in which their communities grow. Although the Act itself contains few, if any, substantive growth regulations, it requires every landowner who wishes to divide a single parcel of land into smaller parcels for individual sale — thereby increasing the density of settlement on the land — to obtain the approval of the local government before doing so. [Citations.] At the same time, the Act vests "[r]egulation and control of the design and improvement of subdivisions' in city and county governing bodies, requiring them to adopt ordinances regulating the manner in which growth will occur. [Citation.] By requiring proposed new subdivisions to comply with these regulations as a condition of approval, local governments can ensure that new real estate development conforms with their communities' general and specific plans and other regulations adopted to guide growth." ' " (*Save Mount Diablo v. Contra Costa County* (2015) 240 Cal.App.4th 1368, 1377 (*Save Mount Diablo*).)

The Act "legitimizes property divisions under processes that are both forward and backward looking." (*Save Mount Diablo, supra,* 240 Cal.App.4th at p. 1377.) With respect to forward looking processes, the Act requires "an owner who wants to subdivide property to apply for a final or parcel map effecting the subdivision." (*Save Mount Diablo*, at p. 1377.) The Act "enforces the requirement of map approval by prohibiting the sale, lease, or financing of a lot until an approved final or parcel map, as appropriate, has been recorded with respect to the lot." (*Witt Home Ranch, Inc. v. County of Sonoma* (2008) 165 Cal.App.4th 543, 551.) Upon recordation of the appropriate

map, the single parcel of land is subdivided into however many separate parcels appear on the approved map. (*Gardner, supra,* 29 Cal.4th at p. 1002.)

With respect to backward looking processes, the Act recognizes that "the regulation of real property subdivision and development in California has evolved significantly over the last 150 years." (*Abernathy Valley, Inc. v. County of Solano* (2009) 173 Cal.App.4th 42, 47 (*Abernathy Valley*).) The Act gives effect to prior property divisions, which were legal at the time they were made, by allowing "an owner to legitimize a division of property that has already occurred by obtaining a certificate of compliance with the Act." (*Save Mount Diablo, supra,* 240 Cal.App.4th at p. 1378.) "Once a certificate of compliance has been issued, the property 'may be sold, leased, or financed without further compliance with the . . . Act or any local ordinance enacted pursuant thereto.' [Citations.] In other words, the certificate of compliance clarifies the legal status of property that is not reflected on a recorded final or parcel map, thereby facilitating transactions involving the property." (*Ibid.*) The Act's provision for the issuance of such certificates reflects an " 'effort to provide a fair and equitable scheme to settle the validity of divisions of land occurring in decades past under earlier provisions of law.' " (*Save Mount Diablo,* at p. 1379.) "A certificate of compliance is properly issued . . . when a statutory exemption from the map requirements applies." (*Save Mount Diablo,* at pp. 1378–1379.) One such statutory exception is section 66412.6(a). (*Save Mount Diablo,* at p. 1379.)

## B.

Section 66412.6(a) provides: "For purposes of this division or of a local ordinance enacted pursuant thereto, any parcel

created prior to March 4, 1972, shall be conclusively presumed to have been lawfully created if the parcel resulted from a division of land in which fewer than five parcels were created and if at the time of the creation of the parcel, there was no local ordinance in effect which regulated divisions of land creating fewer than five parcels."

" ' "The interpretation of a statute presents a question of law that this court reviews de novo." ' " (*Davis v. Fresno Unified School Dist.* (2023) 14 Cal.5th 671, 687.) " 'Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] 'We first consider the words of the statutes, as statutory language is generally the most reliable indicator of legislation's intended purpose.' [Citation.] 'We consider the ordinary meaning of the relevant terms, related provisions, terms used in other parts of the statute, and the structure of the statutory scheme.' [Citation.] If the relevant statutory language permits more than one reasonable interpretation, we look to appropriate extrinsic sources, such as the statute's purpose, legislative history, and public policy." (*Prang v. Los Angeles County Assessment Appeals Board* (2024) 15 Cal.5th 1152, 1170 (*Prang*).)

When the Legislature enacted the requirement that the creation of a parcel result from a "division of land" (§ 66412.6(a)), it adopted language similar to what it had used for more than half a century in defining the applicability of the Act (or the Act's statutory predecessors).[7] In fact, when the

---

[7]  See, e.g., Stats. 1929, ch. 837, § 1, p. 1791 ["A 'subdivision' is a tract of land composed of five or more lots of one acre or less in area, provided that when any person within one calendar year

Legislature first adopted section 66412.6(a) in 1980,[8] section 66424 provided, as it does currently, that " 'Subdivision' means the *division*, by any subdivider, *of* any unit or units of improved or unimproved *land . . . .*" (Stats. 1979, ch. 1192, § 1, p. 4691, italics added; § 66424.) In other words, "[s]ubdivision" under section 66424 "generally refers to a *division of land* for sale, lease, or financing." (*van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 565 (*van't Rood*), italics added.)

Given that the Act both "defines 'subdivision' " (*van't Rood, supra,* 113 Cal.App.4th at p. 565) in section 66424 and "provides a mechanism for determining the legality of a previously established subdivision" through section 66412.6(a) (*van't Rood*, at p. 565), it may be said that the two statutes relate to the same subject, namely the division of land under the Act. This relation is further evident from the fact that the Legislature made the operative date for section 66412.6(a) — March 4, 1972 — identical to "the effective date of legislation adding the requirement of a parcel map to the [Act] for divisions

---

*divides any tract* into five or more parts of one acre or less in size, such tract shall be deemed to be a subdivision" (italics added)]; Stats. 1937, ch. 670, § 2(g), p. 1864 [" 'Subdivision' shall mean *any land* or portion thereof shown on the last preceding tax roll as a unit or as contiguous units which is *divided* for the purpose of sale, whether immediate or future, by any subdivider into five or more parcels within any one year period" (italics added)].

[8] The Legislature added section 66412.6(a) to the Act in 1980 by way of Assembly Bill No. 978 (1979–1980 Reg. Sess.). (Stats. 1980, ch. 403, § 1, p. 788.) The 1980 version of section 66412.6(a) is identical to the current version of the statute, except for one comma prior to the final clause. (See Stats. 1980, ch. 403, § 1, p. 788.)

of land into four or fewer parcels." (*Fishback*, *supra*, 133 Cal.App.4th at p. 904.)

A review of the legislative history of the Act further shows the interconnectedness of sections 66424 and 66412.6(a). When it extended the Act to cover divisions of land creating four or fewer parcels beginning March 4, 1972 (Stats. 1971, ch. 1446, § 5, p. 2854; Bus. & Prof. Code, former § 11535, subds. (b), (d)), the Legislature initially maintained the definition of " '[s]ubdivision' " as encompassing land divided "into five or more parcels," thus distinguishing the two situations. (Stats. 1971, ch. 1446, § 5, p. 2854; Bus. & Prof. Code, former § 11535, subd. (a).) However, the Legislature later removed the numerical parcel qualification when it defined " '[s]ubdivision' " in newly added section 66424. (Stats. 1974, ch. 1536, p. 3467.) Thereafter, in 1980, when the Legislature initially enacted section 66412.6(a), it did so in response to "[c]onfusion . . . over the legality of parcels created prior to March 4, 1972." (Rep. on Assem. Bill No. 978 (1979–1980 Reg. Sess.) as amended May 22, 1980, p. 2.) Thus, the legislative history reveals that the Legislature harmonized the Act's " '[s]ubdivision' " definition in section 66424 with the expansion of the Act to cover divisions of land into four or fewer parcels on which the enactment of section 66412.6(a) was based.

For all these reasons, it seems plain that the two statutes are in pari materia. (See *Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1091 ["Two ' "[s]tatutes are considered to be in pari materia when they relate to the same person or thing, to the same class of person[s or] things, or have the same purpose or object" ' "].) " ' " '[W]hen statutes are *in pari materia* similar phrases appearing in each should be given like meanings.' " ' " (*United Educators of San Francisco etc. v. California*

*Unemployment Ins. Appeals Bd.* (2020) 8 Cal.5th 805, 815.) This principle supports the conclusion that the similar phrases "division of land" in section 66412.6(a) and "division . . . of . . . land" in section 66424 should be given the same meaning.

Further, by interpreting the two statutes in harmony, we advance section 66412.6's purpose of "clarif[ying] that parcels legally created without a parcel map are legal even after the parcel map requirement was added to the [Act]." (*Fishback, supra,* 133 Cal.App.4th at p. 904.) In contrast, if section 66412.6(a) were interpreted as confirming the legality of a parcel from a division of land that would *not* constitute a parcel under section 66424, we would be interpreting section 66412.6(a) as recognizing parcels that never would have been recognized under the Act prior to the enactment of section 66412.6(a). Even plaintiff agrees that this result would subvert the purpose of section 66412.6(a), which is to recognize and confirm the legality of previously created parcels from prior divisions of land rather than to create new parcels.

In addition, both the Court of Appeal and the Attorney General have interpreted "division of land" in section 66412.6(a) by considering what it means to divide land under section 66424. (See *Lakeview Meadows Ranch v. County of Santa Clara* (1994) 27 Cal.App.4th 593, 597–599 (*Lakeview Meadows*); 86 Ops.Cal.Atty.Gen. 70, 71 (2003) [citing 58 Ops.Cal.Atty.Gen. 593, 594 (1975) in which the Attorney General considered whether a condemnation action resulted in a division of land for purposes of § 66424].) Because we agree that "division of land" in section 66412.6(a) should be interpreted in the same manner as the similar phrase in section 66424, we look to authorities

that have interpreted section 66424 to inform our understanding of section 66412.6(a).

Those authorities have uniformly required that, in order to divide land and create a separate parcel, a conveyance must create a separate and exclusive property right over the parcel. For example, in *Gardner*, in addition to our conclusion regarding the legal effect of an antiquated subdivision *map*,[9] we held that a multi-lot property had not been divided into its constituent lots because it had "remained intact under sequential owners throughout its history." (*Gardner*, *supra*, 29 Cal.4th at p. 1003.) We explained that "a subdivided lot shown on [an antiquated subdivision] map generally enjoyed no independent legal status until the owner actually conveyed the lot *separately from the surrounding lands* through a deed or patent." (*Id.* at p. 1001, italics added; see *id.* at pp. 1001–1002, citing, inter alia, *Lakeview Meadows*, *supra*, 27 Cal.App.4th at pp. 596–598, *John Taft Corp. v. Advisory Agency* (1984) 161 Cal.App.3d 749, 756–757 (*Taft*), and 81 Ops.Cal.Atty.Gen. 144 (1998); see also *Abernathy Valley*, *supra*, 173 Cal.App.4th at p. 54 [concluding that the plaintiff was not entitled to certificate of compliance under the Act because "[a]lthough [plaintiff] points out that a

---

[9]     In *Gardner*, this court concluded that, absent the existence of an applicable local ordinance, subdivision maps recorded prior to the first statewide authorization of such recording in 1893 do "not in themselves establish subdivisions or create legal parcels." (*Gardner, supra*, 29 Cal.4th at p. 1006.) We explained that case law established antiquated maps recorded before that year "could not alter the legal status of those properties without the attendant conveyances." (*Id.* at p. 1002.) Thus, we concluded that the plaintiffs could not establish that their property had been legally subdivided by virtue of a subdivision map recorded in 1865. (*Ibid.*)

portion of the property . . . that *includes* Lot 12 has been conveyed . . . , [plaintiff] offers no evidence that Lot 12 was ever separately conveyed as an individual parcel"].)

As in *Gardner*, in *Lakeview Meadows*, *supra*, 27 Cal.App.4th 593, the Court of Appeal considered whether a parcel of land (parcel 4903) had been created by a conveyance. It applied the general definition of " '[s]ubdivision' " in section 66424 and concluded that parcel 4903 had been created because it had been placed into separate ownership from the contiguous units of land surrounding it. (*Lakeview Meadows*, at pp. 597–598.)

The *Lakeview Meadows* court reasoned: "Plaintiff alleged and proved that parcel 4903 was 'created' when it was separated from the other units of land with which it was contiguous by the 1891 federal *patent* which conveyed title to parcel 4903 to [the plaintiff's predecessor in title]. ' "Subdivision" means the division . . . of any unit or units of improved or unimproved land . . . for the purpose of sale, lease or financing . . . .' ([§ 66424].) Hence, land is 'subdivided' when one unit is separated from the contiguous units surrounding it. Because the federal patent which conveyed parcel 4903 to [the plaintiff's predecessor in title] did not convey any of the contiguous parcels surrounding parcel 4903 to [the plaintiff's predecessor in title], this conveyance was a 'subdivision' of land which 'created' parcel 4903 as a separate lot. Accordingly, parcel 4903 was created by a lawful subdivision of land in 1891." (*Lakeview Meadows*,

*supra*, 27 Cal.App.4th at pp. 597–598; see *Gomes v. County of Mendocino* (1995) 37 Cal.App.4th 977, 983.)[10]

We also find particularly instructive an Attorney General opinion that we cited favorably in *Gardner* and that considered a question very similar to the one we face here. (See *Gardner, supra*, 29 Cal.4th at p. 1002, citing 81 Ops.Cal.Atty.Gen., *supra*, 144; accord, *California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1042 [describing persuasive value of Attorney General opinions].) In that opinion, the Attorney General considered the following question: "If a federal patent[11] conveying government property into private ownership describes the property being conveyed in terms of multiple, contiguous 'lots' depicted on an official United

_____

[10]      In addition, the Attorney General has considered whether "a physical division of land in 1965 that resulted in the granting of a deed of property from the owner to [an] irrigation district" in an eminent domain proceeding created two legal remainder parcels in the land divided pursuant to section 66412.6(a). (86 Ops.Cal.Atty.Gen., *supra*, at p. 71.) Just as in *Lakeview Meadows*, the Attorney General concluded that the two new parcels were created when they were placed into separate ownership from the land contiguous to the parcels. (86 Ops.Cal.Atty.Gen., *supra*, at p. 72 [noting that "[t]he two parcels of land retained by the owner are separated by 700 feet of the district's property," and that the condemnation resulted in a "division of land . . . created by the recording of a deed and transfer of ownership"].) Thus, the Attorney General reasoned that "these two separate remainder parcels were lawfully created . . . by the condemnation proceedings as conclusively presumed under the mandate of section 66412.6." (*Ibid.*)

[11]      "A patent is a deed of the United States, the conveyance by which title to portions of the public domain is passed." (*Gardner, supra*, 29 Cal.4th at p. 1001, fn. 8.)

States Government Survey Map,[12] does each lot constitute a distinct legal parcel that a county must recognize for purposes of the [Act]?" (81 Ops.Cal.Atty.Gen., *supra,* at p. 144.) The Attorney General answered the question in the negative, concluding that "lots described . . . collectively constitute one parcel for purposes of the Act, not multiple legal parcels." (*Id.* at p. 146.)

In concluding there had been no "subdivision of land" (81 Ops.Cal.Atty.Gen., *supra,* at p. 145) under section 66424, the Attorney General relied on *Taft, supra,* 161 Cal.App.3d 749. The Attorney General noted the *Taft* court's conclusion that "three contiguous lots [depicted on an 1878 United States Government Survey Map] that were later included in a patent conveying approximately 140 acres of property into private ownership" did not subdivide land for purposes of the Act. (81 Ops.Cal.Atty.Gen., *supra,* at p. 145.) The Attorney General stressed that in *Taft,* "Subsequent conveyances were accomplished by a single instrument that separately identified, but did not divide, ownership of the lots." (*Ibid.*; accord, *Taft,* at p. 755 [stating that the Act "regulates the manner in which an owner of a contiguous block of land may 'subdivide' or convey a portion of land while retaining the balance"].) And the Attorney General specifically distinguished the conveyance at issue in

_____

**12** "The [United States] Survey Map was prepared pursuant to the federal survey law which was enacted to provide a common method of property description. . . . [¶] After California became a part of the United States in 1848 all of its public lands — those not encompassed by the boundaries of a pueblo or a Spanish or Mexican land grant — were surveyed utilizing the system prescribed by the federal survey law." (*Taft, supra,* 161 Cal.App.3d at p. 754.)

*Lakeview Meadows*, explaining that in the matter before the Attorney General "there [was] but one patent that encompasses several *contiguous* parcels." (81 Ops.Cal.Atty.Gen., *supra*, at p. 146, fn. 3, italics added.)[13]

While plaintiff contends that the Attorney General's opinion does not address the "issue of division by conveyance," and maintains that the opinion "only holds that a *Survey Map* does not establish a subdivision for purposes of the [Act]" (italics added), that is not a tenable reading of the opinion. The Attorney General expressly stated that the opinion was addressing whether "when a federal patent *conveys* the lots into private ownership, each of the lots must be recognized by the county for purposes of the Act" (81 Ops.Cal.Atty.Gen., *supra*, at p. 145, italics added), and the Attorney General relied on the fact that there was "but one *patent* that encompasses several contiguous parcels." (*Id.* at p. 146, fn. 3, italics added.)

Moreover, the Attorney General's determination in 81 Ops.Cal.Atty.Gen., *supra*, 144 is consistent with numerous other opinions that office has issued concerning what it means to divide land under section 66424. In these opinions, the Attorney General has frequently found a conveyance to effectuate a division of land for purposes of section 66424 because the conveyance granted a right to exclusively occupy a portion of an existing parcel. (E.g., 57 Ops.Cal.Atty.Gen. 556, 557 (1974) [reasoning that because conveyance designated as a permit granted members " 'sole and exclusive right to occupy,' " it constituted division of land under the Act];

---

[13]  As noted *ante*, the parcel at issue in *Lakeview Meadows* was created through a conveyance of several *noncontiguous* lots. (See *Lakeview Meadows*, *supra*, 27 Cal.App.4th at p. 597.)

39 Ops.Cal.Atty.Gen. 82, 84 (1962) ["Since ownership in fee encompasses the 'right of exclusive occupancy,' . . . the division of a parcel of real property into 'parcels' of air space to be owned in fee constitutes a 'subdivision' which if not specifically excepted, is subject to the provisions of . . . the . . . Act"]; 38 Ops.Cal.Atty.Gen. 125 (1961) ["The conveyance . . . which gives the grantee the exclusive right to occupy a unit or parcel therein is a 'subdivision' to which the provisions of the . . . Act apply"].)[14] And courts have frequently relied on Attorney General opinions when determining whether there has been a division of land under the Act. (See, e.g., *Gardner*, *supra*, 29 Cal.4th at p. 1006; *Save Mount Diablo*, *supra*, 240 Cal.App.4th at p. 1381.)

Here, none of the conveyances at issue conveyed an exclusive property right over Lot 18 alone. Instead, in each instance the conveyance granted the ownership of Lot 18 along with additional contiguous land. Therefore, since Lot 18 has never been conveyed "separately" (*Gardner*, *supra*, 29 Cal.4th at

---

[14] Courts and commentators read these Attorney General opinions the way we do. (See *Blackmore v. Powell* (2007) 150 Cal.App.4th 1593, 1605 [stating that each of these Attorney General opinions "concern[ed] a scheme of joint or collective ownership of land that also accorded its members exclusive rights to reside on a portion of the land"]; Curtin & Merritt, Cal. Subdivision Map Act and the Development Process (Cont.Ed.Bar 2d ed. 2016) § 2.5 ["Attorney General opinions have stressed that the key to whether a division has occurred is whether a person has been granted exclusive occupancy of the property"]; 1 Lindgren & Mattas, Cal. Land Use Practice (Cont.Ed.Bar 2023 supp.) § 9.13 [citing these Attorney General opinions and stating, "In general, a conveyance constitutes a 'division of land' if it grants a right to exclusive ownership or occupancy of a portion of an existing parcel"].)

p. 1001), but instead has remained part of contiguous land "under sequential owners throughout its history" (*id.* at p. 1003), *Gardner* as well as authority from the Courts of Appeal and the Attorney General all support the conclusion that the mere identification of Lot 18 as part of the description of contiguous land being conveyed did not "create[]" Lot 18 as a separate parcel from a "division of land." (§ 66412.6(a).)

## C.

Although both the City and an amicus curiae contend, persuasively in our view, that sections 66412.6(a) and 66424 should be read analogously, plaintiff provides no response to this argument. Indeed, plaintiff does not discuss or cite section 66424 in its briefing in this court.

The arguments which plaintiff does provide to support its contention that Lot 18 was created as a parcel that "resulted from a division of land" are unpersuasive. (§ 66412.6(a).) Instead of reading section 66412.6(a) in context (see *Prang*, *supra*, 15 Cal.5th at p. 1170), plaintiff argues that we should eschew what it characterizes as a "restrictive" definition of "division of land." (§ 66412.6(a).) In support of this contention, plaintiff asserts that land is "often" legally divided from contiguous parcels *without* being transferred to a separate owner. Yet, the only relevant authority that plaintiff cites involved the transfer of property *with* a change of ownership. Specifically, plaintiff cites 86 Ops.Cal.Atty.Gen., *supra*, 70 and contends that "[l]and belonging to a single owner can . . . be legally 'divided' by a physical separation that does not affect ownership." However, as noted in footnote 10 *ante*, and as expressly stated in the Attorney General's opinion, that case involved a "condemnation" (86 Ops.Cal.Atty.Gen., *supra*, 70)

caused by a "court order resulting in two new remainder parcels of land created by the recording of a deed and *transfer of ownership*." (*Id*. at p. 72, italics added.) Thus, the Attorney General's opinion stands for the proposition that a "division of land" under section 66412.6(a) arises where parcels are placed into separate ownership from contiguous lands. It does not support plaintiff's contention that Lot 18 was divided by conveyance *without* being separately transferred to an owner different from the owner or owners of contiguous lands.[15]

Plaintiff also argues that "[c]ourts have adopted an expansive definition of 'division of land' in other land use cases." (Citing *La Fe, Inc. v. County of Los Angeles* (1999) 73 Cal.App.4th 231.) In *La Fe*, the Court of Appeal concluded that a lot line adjustment amounted to "development" under a provision of the California Coastal Act of 1976 (Coastal Act; Pub. Resources Code, § 30000 et seq.) that was expressly broader than the meaning of "subdivision" in the Act. (See *La Fe*, at p. 235 [" ' "Development" means, on land, in or under water . . . change in the density or intensity of use of land, including, but not limited to, subdivision pursuant to the . . . Act . . . and any other division of land, including lot splits' " (quoting Pub. Resources Code, § 30106)].) Further, the *La Fe* court relied on the fact that the definition of " 'development' " under the Coastal Act was not limited to a " 'division of land' " under the Act. (*La Fe*, at pp. 240–241.) The *La Fe* court's understanding of the meaning of "division of land"

---

[15] Plaintiff does not argue that Lot 18 was ever divided for purposes of section 66412.6(a) by a property owner *without* a conveyance to a separate person. Thus, we need not consider whether such a division was possible at common law.

under the Coastal Act (Pub. Resources Code, § 30106) is simply inapposite to determining the proper interpretation of "division of land" under the Act (§ 66412.6(a)).[16]

Next, and more generally, plaintiff asserts that "[t]o evidence an intent to divide land under the common law, a deed could identify the land as separate parcels with reference to an antiquated map, even if those parcels were conveyed simultaneously on one deed." But plaintiff cites no authority to support this proposition, and we are not aware of any opinion holding that a deed's mere identification of separate lots effectuated a division of contiguous land under common law.

*People ex rel Brown v. Tehama County Bd. of Supervisors* (2007) 149 Cal.App.4th 422 (*Tehama*), which plaintiff relies on heavily, does not support its position. In *Tehama*, the Court of Appeal concluded that a 1904 deed that described the property being conveyed using a single metes and bounds description conveyed a single parcel, notwithstanding that the property conveyed consisted of parts of two *preexisting* parcels. (*Id.* at p. 438 ["by all appearances, the deed conveyed a single new parcel created from parts of the two parcels [grantor] owned . . . , rather than two new parcels, each created from one of those parts"].) Although the *Tehama* court rejected a claim that the deed did not "evince an intention to merge heretofore

---

**16** Plaintiff also states that "modernly, the [Act] requires division on paper, through recording a compliant map." However, the fact that the Act provides for the division of land by the recording of a compliant map on a going forward basis is not informative about whether a conveyance "created" a parcel through a "division of land" (§ 66412.6(a)) through this "backward looking" provision of the Act. (*Save Mount Diablo, supra,* 240 Cal.App.4th at p. 1378.)

separate pieces of land" (*id.* at p. 440), the court did not opine about the creation of new parcels through the division of land. And plaintiff has neither argued nor established that the common law governing the *merger* of *parts* of *existing* parcels is analogous to the common law that governs the *creation* of *entirely new* parcels. In sum, *Tehama* is not common law authority that supports plaintiff's argument.

The case law cited by the Court of Appeal below, supporting the uncontroversial proposition that a single conveyance can transfer multiple separately described lots, also fails to support plaintiff's argument. (*Cox*, *supra*, 91 Cal.App.5th at p. 867 [citing *Yuba City v. Mausoleum Syndicate* (1929) 207 Cal. 587, 588 (*Yuba City*), *Martin v. Holm* (1925) 197 Cal. 733, 738, 740–741 (*Martin*), and *McCullough v. Olds* (1895) 108 Cal. 529, 530–532 (*McCullough*)].) None of these cases considered whether a reference to multiple contiguous lot numbers constituted a division of land corresponding to the lots. In other words, the mere fact that multiple lots can be transferred using a single deed says nothing about the legal effect of identifying the lots in such a deed.

In sum, aside from the Court of Appeal below, we are not aware of any court that has concluded that a grant deed's description of a contiguous property by reference to lot numbers on an antiquated subdivision map divided the contiguous property into multiple parcels corresponding to the lot lines on the map.

In addition, there is a compelling reason why grantors at common law might have included lot number references from antiquated subdivision maps in deeds that is distinct from an intent to *divide* the land conveyed. Namely, such references

serve to *identify* the land conveyed. (See *Cox*, *supra*, 91 Cal.App.5th at p. 866 [stating "a deed can sufficiently describe the property conveyed by referencing the map (including an antiquated map) that depicts it and that a metes and bounds description is not required," and observing that "this practice is reflected in very early cases," citing *Yuba City*, *supra*, 207 Cal. at pp. 588–589, *Martin*, *supra*, 197 Cal. at pp. 741–742, and *McCullough*, *supra*, 108 Cal. at pp. 530–531]; see also *Gardner*, *supra*, 29 Cal.4th at p. 1001 [noting the existence of common law decisions that "recognized the principle that subdivision maps could properly supply the legal description of property conveyed by deed"]; accord, *Taft*, *supra*, 161 Cal.App.3d at p. 757 [explaining that California cases "hold not that [a] U.S. Survey Map established 'subdivisions,' but that it supplied monuments and lines essential for the description of property which might be subdivided or conveyed in the future"].) While citing no examples of such lot number references effectuating a *division* of deeded property, plaintiff acknowledges that "maps were commonly used descriptively to *identify* deeded parcels" (italics added), and states this "was superior to a metes and bounds description." (Boldface and italics omitted.)

The City explains why referring to block and lot numbers from a subdivision map is superior to utilizing a metes and bounds system: "Metes-and-bounds descriptions consist of directional coordinates and references to landmarks to describe a property and generally are not intelligible on paper alone. Indeed, they often require mapping — likely by a surveyor — to be comprehensible." In addition, the City cites authority, which plaintiff does not dispute, supporting the proposition that " '[d]escriptions by map reference are much less subject to error

than descriptions by metes and bounds or other methods.' " (Quoting California State Board of Equalization's *Assessors' Handbook Section 215: Assessment Map Standards for Manual Systems* (2015) at p. 1 (Assessors' Handbook).)[17]

For example, with respect to the 1944 deed on which plaintiff relies,[18] the desire to easily identify the property explains why references to lot numbers may have been used. On the other hand, *solely* referring to lot numbers would not have adequately described the land conveyed since only a "portion" of Lot 16 was conveyed, and therefore a metes and bounds description was included as well. (*Cox, supra*, 91 Cal.App.5th at p. 853.) There is also another reason for including a reference to the Map in the 1944 deed — apart from an intent to divide the property into the lots referred to on the Map. Namely, the Map was used to explain where the metes and bounds description of the property conveyed in the 1944 deed began.[19]

---

[17] We granted the City's unopposed request to take judicial notice of the Assessors' Handbook.

[18] Plaintiff explains why it focuses on the 1944 deed, stating: "Before the [Act] or a local ordinance regulated divisions of land, each division 're-created' the parcels. Parcels had no permanence and could be unilaterally restructured by owners . . . . In 1972, when the [Act] began to regulate small divisions of land, Lot 18 had been most recently 'created' by the 1944 deed. Thus, in 1972, those borders became permanent and subject to change only through compliance with the [Act]." We express no opinion regarding plaintiff's parcel re-creation theory.

[19] As the *Cox* court recounted, the 1944 deed described the property as follows:

" 'BEGINNING at the point of intersection of the south eastern line of 22nd Avenue, formerly Peralta Street, as said

Accordingly, we are not persuaded by plaintiff's argument that the identification of individual lot numbers in the 1944 deed demonstrates an intention to convey something other than a single parcel.

We are also unpersuaded by plaintiff's argument that adopting the City's interpretation of section 66412.6(a) would render the "fewer than five" language of the statute a nullity because only a *single* new parcel of land could be created by any *single* division of land. Specifically, plaintiff argues that the City's "interpretation allows for the creation of only one parcel (two, if the remaining parcel is counted); it does not allow for a division creating three or four parcels."

To begin with, the City identifies several examples in which more than one parcel would be created by a single conveyance under its interpretation of section 66412.6(a), even if, as in this case, a deed listing contiguous lots from an antiquated subdivision map to a grantee would not create multiple parcels. For example, the City notes that a single

---

Peralta Street is shown on the map hereinafter referred to, with the Southwestern line of East 21st Street; running thence Southeasternly along said line of East 21st street 62 feet; thence at right angles Southwesterly 140 feet; thence at right angles Northwesterly 62 feet to said Southwesterly line of 22nd Avenue; thence Northwesterly thereon 140 feet to the point of beginning.

" 'BEING a portion of Lot Numbered 16, and all of Lots Numbered 17 and 18 in Block Numbered 66, as said lots and block are delineated and so designated upon that certain map entitled "Map of San Antonio," filed September 12, 1854 and recorded April 27[,] 1869 in book 1 of maps at pages 2 and 3 in the office of the County Recorder of Alameda County.' " (*Cox, supra,* 91 Cal.App.5th at p. 853, fn. 8.)

transfer might convey four *noncontiguous* lots to a single purchaser and that each of those lots would be a separate parcel. In fact, in *Lakeview Meadows*, the Court of Appeal noted that the parcel at issue there was created through a single conveyance that also conveyed several noncontiguous lots as multiple separate parcels to the plaintiff's predecessor in title. (*Lakeview Meadows*, *supra*, 27 Cal.App.4th at p. 597.) The City also notes that a conveyance from an existing parcel might result in three new parcels if the conveyance transfers property from the middle of the existing parcel. This latter scenario fits the fact pattern of 86 Ops.Cal.Atty.Gen., *supra*, 70, discussed *ante*, in which the Attorney General concluded that the condemnation of a portion of a parcel of land created two remainder parcels in the land retained by the parcel's original owner. (*Id.* at p. 72.)[20]

Further, while plaintiff argues that section 66412.6(a) "anticipates a scenario whereby four or fewer parcels were created in a *single* act," it provides no authority for this assertion. (Some italics omitted.) In fact, plaintiff's contention is directly contradicted by the historical practice of " 'quartering,' " which contemplated the creation of four or fewer parcels by *multiple* acts within a given assessment period. (*Cox*, *supra*, 91 Cal.App.5th at p. 859, fn. 17.)[21] By including the

---

[20] The City also offers the example of "a will dividing a property between up to four heirs and thus effectuating a division that [section 66412.6(a)] could validate."

[21] The Court of Appeal explained quartering as follows: "Because the pre-1972 versions of the Subdivision Map Act defined 'subdivision' to exclude subdivisions of 'fewer than five' parcels within a given assessment period . . . . [a] parcel would

"fewer than five" language in section 66412.6(a), the Legislature recognized this practice and ensured that parcels quartered at common law remained legal parcels. This too provides a clear reason for the Legislature's inclusion of the "fewer than five" language in section 66412.6(a) and refutes plaintiff's theory that its interpretation of the statute is required in order for such language to have practical effect.

**D.**

Our interpretation of section 66412.6(a) also furthers the statute's purpose, as well as the Act's purpose more generally. (See *Save Mount Diablo*, *supra*, 240 Cal.App.4th at p. 1383 [noting that its interpretation of the Act was "supported not only by the Act's plain language, but also by sound policy"].) The Court of Appeal in *Save Mount Diablo* explained that the Act's "grandfather clauses," including section 66412.6(a), provide an exemption from the Act's requirements in " 'an obvious effort to provide a fair and equitable scheme to settle the validity of divisions of land occurring in decades past under earlier provisions of law.' " (*Save Mount Diablo*, at p. 1379.) Similarly, we have explained that such provisions protect those " 'who have detrimentally relied on an earlier state of the law.' " (*Gardner*,

---

be subdivided into four parcels, and these four parcels would, in turn, each be divided into four more parcels prior to the preparation of the next assessor's map." (*Cox*, *supra*, 91 Cal.App.5th at p. 859, fn. 17; see *Fishback*, *supra*, 133 Cal.App.4th at p. 902 ["Because the definition of subdivision [under prior versions of the Act] required a division of a unit of land into five or more parcels in any one year, a division of a parcel into four or fewer parcels *within a year* was not governed by the [A]ct" (italics added)]; see also, e.g., fn. 7, *ante* [quoting a former version of the Act and its statutory predecessor, each containing such a definition of "subdivision"].)

*supra*, 29 Cal.4th at p. 1003.) But that purpose is " 'hardly served by allowing later purchasers of property which has never been sold in subdivided form to' " invoke these protections. (*Ibid.*) In that instance, " 'the later purchaser placed no reliance on the prior state of the law.' " (*Ibid.*)

Plaintiff argues that the Act should be interpreted to protect its reliance interests. But as discussed *ante*, no common law authority supports plaintiff's contention that Lot 18 has ever existed in subdivided form. Moreover, plaintiff has not identified any reason that parties to a property transaction at common law would have used lot references from a subdivision map to divide property conveyed to a grantee into distinct parcels. That is, there would have been no reason for a grantor to specify in a conveyance that a contiguous piece of property contained multiple parcels since the new owner could divide the land along different lines in a future transaction.

In *Tehama*, the Court of Appeal recognized this point in concluding that, absent knowledge by the parties that the law would change to restrict the grantee's subsequent division of property, the parties to a transaction unregulated by the Act would not have been concerned with the number of parcels a particular conveyance transferred. (*Tehama, supra*, 149 Cal.App.4th at p. 439, fn. 13 ["it is difficult to imagine why the parties to the 1904 transaction would have been concerned about maintaining existing patent parcel boundaries as a means of protecting themselves against future regulation they 'could never have predicted' "]; see *id.* at pp. 438–439.)

Given the lack of reasons for such a transaction, and the lack of any authority suggesting such a division by conveyance were possible, it makes little sense to ask whether the parties to

a transaction might have intended such a result. Thus, whether, as in this case, a historical conveyance identified each internal lot by reference to a subdivision map, or whether such a conveyance identified each lot within a contiguous parcel with its own metes and bounds description or some other method, we see no basis for concluding simply on that basis that such a conveyance created legal parcels in the separately described lots at common law.[22] As we explained in *Gardner*, it was only when the "owner actually conveyed the lot *separately from the surrounding lands*" that a division by conveyance was effectuated. (*Gardner*, *supra*, 29 Cal.4th at p. 1001, italics added.) In contrast, here, where a contiguous piece of property "has remained intact under sequential owners throughout its history," the common law does not support the conclusion that the property is, in reality, multiple legal parcels "within the decisions recognizing the establishment of subdivisions by conveyance." (*Id.* at p. 1003.)

In the absence of any common law support for the recognition of the parcel creation theory that plaintiff proposes,

---

[22] As one treatise explained, in summarizing the law governing the creation of parcels at common law, "However the land is described, the deed or patent creates only the parcel's outer boundaries — the internal description of the land is of no consequence." (1 Lindgren & Mattas, Cal. Land Use Practice, *supra*, § 9.142.)

We note that the internal description of land in a deed *may* be relevant in other contexts, such as where the land has *already* been subdivided. (See *Tehama*, *supra*, 149 Cal.App.4th at pp. 437–438 [considering the parties' intent in determining the number of parcels where the land had previously been divided].) However, we express no opinion on this issue since it is not present in this case.

there is no reason to interpret section 66412.6(a) in a manner that would protect plaintiff's reliance interests. Plaintiff's reliance interests are nonexistent and are not contravened by our interpretation of the Act.

Our interpretation also advances the Act's goals of encouraging orderly community development and preventing undue burdens on the public. (*Pacific Palisades, supra,* 55 Cal.4th at pp. 798–799.) Under plaintiff's interpretation, by contrast, vast numbers of parcels could be free from "further compliance with the . . . Act or any local ordinance enacted pursuant thereto." (§ 66499.35, subd. (f)(1)(E).) This circumstance risks causing undue and unexpected burdens on public infrastructure and preventing communities from ensuring that growth is orderly and in the public interest. These considerations further weigh against adopting plaintiff's interpretation. (See *Gardner, supra,* 29 Cal.4th at p. 1005 [noting that to adopt the plaintiffs' position and hold that local agencies were required to issue certificates of compliance would mean that affected parcels could be sold, leased or financed without regard to land use and public health consequences and without affording notice and opportunity to be heard to persons and landowners affected by such actions].)

## E.

To summarize, section 66412.6(a) provides that lawful parcels "created" by a "division of land" prior to the effective date of the Act's parcel map filing requirement continue to be lawful parcels. We conclude that a conveyance does not "create[]" a parcel that results from a "division of land" merely by referring separately to constituent parts of the contiguous property being conveyed. (§ 66412.6(a).) Like similar text in section 66424, the

phrase "division of land" in section 66412.6(a) refers to a conveyance that alienates one portion of an original parcel, which creates a single new parcel comprised of the conveyed portion of property.

While plaintiff argues that "[e]very deed transferring Lot 18 from 1885 to 1972 satisfied the requirements of [section 66412.6(a)]," it is undisputed that Lot 18 has always been conveyed together with at least one other contiguous lot. Thus, none of the pre-1972 deeds separated Lot 18 as a distinct unit of land from all other land conveyed and there has been no prior "creation" of Lot 18 as a separate parcel. (§ 66412.6(a).)

For example, the 1944 deed on which plaintiff focuses its briefing conveys a portion of Lot 16, Lot 17, *and* Lot 18. Because Lot 18 was only a *part* of the property carved out of an existing parcel and conveyed, we conclude that Lot 18 was never created as a distinct "parcel" that "resulted from a division of land" under section 66412.6(a).[23] Thus, plaintiff cannot establish a "subdivision[] by conveyance." (*Gardner, supra*, 29 Cal.4th at p. 1003.)

---

[23] As noted, while the *Cox* court stated that the 1944 deed transferred the property to a "grantee" (*Cox, supra*, 91 Cal.App.5th at p. 853), it appears from the record that the 1944 deed transferred the property to two grantees as joint tenants. However, such discrepancy is immaterial to our analysis because a joint tenant "simultaneously possesses both the entire tenancy and an equal, undivided share of the tenancy" (*Estate of Propst* (1990) 50 Cal.3d 448, 455), and thus a joint tenant is indistinguishable from a single grantee for purposes of our decision.

## III. DISPOSITION

We reverse the judgment of the Court of Appeal.

**GUERRERO, C. J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Cox v. City of Oakland

_____

<u>**Procedural Posture**</u> (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 91 Cal.App.5th 850
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S280234
**Date Filed:** January 23, 2025

_____

**Court:**  Superior
**County:**  Alameda
**Judge:**  Paul D. Herbert

_____

**Counsel:**

Chandler & Shechet, Aaron Nathan Shechet and Leigh Anne Chandler for Plaintiff and Appellant.

Law Offices of Thomas J. Gearing and Thomas J. Gearing for Thomas J. Gearing as Amicus Curiae on behalf of Plaintiff and Appellant.

Jarvis, Fay & Gibson, Jarvis Fay, Rick W. Jarvis, Christie Crowl; Barbara J. Parker, City Attorney, Maria Bee, Chief Assistant City Attorney, Allison Ehlert, H. Luke Edwards and Patrick Brian Mulry, Deputy City Attorneys, for Defendant and Respondent.

Rural County Representatives of California and Arthur J. Wylene for California State Association of Counties and League of California Cities as Amici Curiae on behalf of Defendant and Respondent.

Bernadette Curry, County Counsel (Solano), Carrie Blacklock, Assistant County Counsel, and James W. Laughlin, Deputy County

Counsel, for the County of Solano as Amicus Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Aaron Nathan Shechet
Chandler & Shechet, LLP
P.O. Box 7244
Beverly Hills, CA 90212
(310) 339-1354

Allison Ehlert
Deputy City Attorney
1 Frank H. Ogawa Plaza
Oakland, CA 94612
(510) 238-3601